The opinion of 'the court was delivered by
Monroe, J.
This court being of opinion that The case presented is one in which the dissolution of the injunction as prayed for by relator will work no irreparable injury to the plaintiffs in injunction, and considering that the discretion vested in the legislative departmenlfc of the city government should not be interfered with by the courts save in clear cases, and after hearing and satisfactory proof of abuse of such discretion, unless it is made to appear that immediate injury will otherwise result to the party complaining; and further consideration that the application in this case was made to restrain the sale of a franchise under the authority of the city government, after the same had been advertised for the greater part of the ninety days required, and at so late a period as to preclude a final hearing upon the merits before the day fixed for said sale, thus giving to the preliminary writ the effect of defeating said sale; and further considering that the *1277 rights of all parties are fully preserved with reference to the merits of the ease; and for further reasons which the court reserves the right to file,
It is ordered, adjudged and decreed that the preliminary writ of mandamus herein issued be now made peremptory, and accordingly that the respondent Judge be commanded to permit the city of New Orleans to dissolve the preliminary injunction herein granted by him in the manner as prayed for by said city.
This is-an application for a writ of mandamus, directing the judge a quo to permit the city of New Orleans to dissolve, as on bond, a preliminary injunction, restraining the sale of a certain street railroad franchise.
The respondent, for answer, says that he refused to dissolve the injunction, after hearing the parties, and in the exercise of a discretion vested in him by law, which discretion, as he apprehends, is not subject to review by a writ of mandamus.
There is no doubt that the more common, and the preferable method of bringing up questions of this kind is by appeal. But it is equally unquestionable that, where there is no remedy by appeal, or where an appeal will not afford adequate relief, or meet the ends of justice, the power exists in this court, in the exercise of the supervisory jurisdiction conferred upon it by the Constitution, to interpose its authority by means of some remedial writ or order.
It was with the view that the broadest latitude should be allowed in ■this respect, and that no case, and no litigant, should be beyond the reach of its protection, that the Constitution of 1879 conferred upon the Supreme Court, in addition to its appellate jurisdiction, “control and general supervision over all inferior courts”; and, for the purposes of such control and general supervision, authorized it “to issue writs of certiorari, prohibition, mandamus, quo warranto, and other remedial writs”; and that the present Constitution, adopted after an experience of eighteen years under the Constitution just referred to, confers the same authority, in the same language, and makes the grant more effective by authorizing, not only the court, but “any justice thereof” to issue -the writs necessary to afford relief, and especially authorizes the review of the decisions of the courts of appeal “by certiorari or othenvise”.
*1278 If, therefore, a litigant is aggrieved by the action of any inferior tribunal, and no other adequate remedy is provided by law, he is entitled fto invoke the authority thus vested, in this court for his relief. If his case can be brought here by appeal, then, ordinarily, he should avail himself of that remedy. But if the particular remedy thus provided should be inadequate and should' afford no relief, with respect to his grievance, he is entitled to a remedy in some other form, since the power of this count is not restricted to granting relief in cases which may be brought before it by appeal, but extends to all cases cognizable by the inferior courts of this State; and the ease of a litigant, who is entitled to an appeal, but who can derive no benefit therefrom, does noit differ in this respect from that of one who has no right of appeal, the question to be determined being, whether the grievance complained of, considered with reference to its character, and with reference to the existence or non-existence of other adequate remedies,’ is such as to justify the interposition of the authority of this court.
The main case, out of which the present controversy arises, is now pending, and untried in the Civil District Court, and is appealable, on its merits, to this court. .
The particular order, or judgment, which is the immediate subject of complaint; that is to say the refusal of the judge a quo to dissolve, as on bond, the pending injunction, upon the application of the city of New Orleans, defendant therein, being in the nature of an interlocutory decree, is subject, under our jurisprudence, to appeal, in the event of its being found that it may work an irreparable injury. C. P., 566. State ex rel. Bernard Barthe vs. Judge, 28th Ann., 903; State ex rel. Doullut vs. Judge, 29th Ann., 867.
But the circumstances of the ease are such that the appeal, if allowed, would afford no relief quoad the particular injury complained of. Those circumstances, as disclosed by the pleadings and papers in the record, are as follows, to-wit:
Upon December 26th, 1899, the legislative department of the. city of New Orleans, adopted an drdinanee, which was duly signed by the Mayor upon the following day, providing .for the sale, after ninety days’ advertisement, of a certain street railroad franchise; and the sale was accordingly advertised, Dec. 29,1899, and other days succeeding, to take place March 29, 1900. Upon March 16th, Peter Johnson and E. J. Dare, claiming to be citizens of New Orleans and owners of property assessed at more than two thousand dollars, to each of them, *1279 and for that reason interested in the proper administration of the affairs of the city, filed a petition in the Civil District Court, praying that the ordinance authorizing the sale of said franchise, as proposed, be decreed null, and that the sale be perpetually enjoined. A rule nisi was served on the city, and the matter of the issuance of the preliminary injunction, prayed for in the petition, was heard on ¡the 21st, and determined on the 23rd of March, when the rule was made absolute, and the injunction issued on a bond of twenty-five hundred dollars.
We are not so much concerned, at this time, with the allegations of the petition upon which the order for the injunction was made, and it might be conceded for the purposes of the question which we are called upon to decide, that, if sustained, after a trial upon the merits, they or some of them, may be sufficient to entitle the plaintiffs to a judgment annulling the ordinance which is the subject of attack, and annulling any sale made under its authority, though upon this point we reserve our opinion. It suffices for the present to say that it was made to appear upon the trial of the rule nisi that the ordinance received the votes of all the members of the council except three; of whom, two were absent, and one was excused from voting. And it was, thereafter, duly signed by the Mayor.
It also appears that, by the terms of said ordinance, the right is reserved to the council to reject any and all bids, and that in the event of the acceptance of any bid, the city and ¡the successful bidder are, fifteen days thereafter, to enter into a contract, before a notary public, declaring and defining their respective rights and obligations. There is, therefore, a locus poeneteniiae provided for the city, in case the franchise should be adjudicated under the advertisement, of which she could avail herself before becoming bound by such adjudication, and of which it would be equally practicable for the plaintiffs in injunction, or any other complaining citizens, to avail themselves, in order to defeat the consummation of what the plaintiffs allege to be an illegal and ultra vires proceeding.
The effect of the injunction, therefore, is to arrest the officers upon whom is imposed the responsibility of administering the government of the city-of New Orleans, in both its legislative and executive departments, in the discharge of their functions, whilst dealing with a particular subject within the scope of the authority conferred upon them and before any such definite action is imminent as could, of itself, work injury to the public at large, or to any citizen. For, as we *1280 have seen, the adjudication can have no effect until ratified by the council, and the ratification must be by means of an ordinance, the question of the adoption of which is subject to the exercise of legislative discretion; and not until fifteen days after the adoption of said ordinance, which may never be adopted, is there any possibility of the city’s entering into a contract whereby she will be bound by said adjudication. It is apparent, also, that no rights acquired by the plaintiffs by reason of the institution of their suit and the issuance of their injunction can be affected by the dissolution of said injunction, as on bond, at the instance of the city. The case remains ¡to be tried on its merits, and the judgment to be rendered will be as effective, so far as the plaintiffs are concerned, whether the injunction be released, as on bond, or kept in force. The dissolution could, therefore, work no injury to them, either irreparable or otherwise, whilst its maintenance, having the effect of preventing the offering of the franchise as contemplated, defeats the deliberately considered plans of the city government, and may work injury not only serious, but, perhaps, irreparable in the sense in which that word has, not unfrequently, been used in our jurisprudence.
Upon the one hand, then, the plaintiffs in injunction cannot he injured by its dissolution in the manner proposed, whilst the city'of New Orleans, defendant in injunction, may be seriously injured by the refusal of its application for dissolution, as on bond. We are of opinion, under these circumstances, that the city has a substantial grievance; and Ithe question is, has she any remedy ? It will be remembered that the ninety days’ advertisement of ¡the franchise was begun upon December 29, 1899, and that the injunction was applied for March 16,1900, and was issued upon the 23rd of the same month— only six days before that fixed for the sale. When, therefore, the application to dissolve, as on bond, was refused, the remedy by appeal was not available, because the appeal would have left the injunction in force, and the matter could not have been heard or determined, in this court, before the day fixed for the sale; and hence, the sale could not take place, as advertised. If ¡the injunction had issued within a reasonable time after the advertisement first appeared, the matter might, perhaps, have been determined, both in the District Court and here, in time ¡to have relieved the situation. But the plaintiffs in injunction delayed their application until, practically, the last moment; and, because it was then too late for the city to invoke the remedy *1281 supposed to be applicable in such cases, it is said she is without remedy. This is to say, not only that there is a wrong without a remedy, but that the very broad grant of authority conferred upon this court, by the fundamental law, with respect to the “control and general supervision over all inferior courts”, is still inadequate for the purposes of what appears to be a very simple case.
The difficulty, it is said, lies in the fact that the writ of mandamus will only issue to direct a judge to perform some purely ministerial act, and will not lie to compel him to do a thing, the doing of which is within his discretion. This is undeniably true as a general proposition, but the functions of that writ have been considerably broadened by ithe terms in which the supervisory jurisdiction mentioned above has been conferred upon this court, since the language of the Constitution is, that in the exercise, and for the purposes, of that jurisdiction, we may issue “writs of certiorari, prohibition, mandarnus, quo warranto, and other remedial writs •” whereas, referring to the writs of mandamus and prohibition, as defined in the Code of Practice, we find that they were intended only for the use of a court, exercising appellate jurisdiction over an inferior court (O. P., 839, 946). The authority of the Constitution, then, being superior to that of the Code of Practice, the use in this court of the writs mentioned is no longer confined to cases as to which this court has only appellate jurisdiction, but is extended to all eases where they may be needed for the purposes contemplated by the Constitution.
The Code of Practice expresses the generally accepted idea of .the functions of the writ of mandamus, and the rule therein contained, that its use, as between courts, is confined to those exercising appellate jurisdiction, is as commonly received as the rule that the writ does not lie to control the discretion of a judge. And yet, acting under the authority of the Constitution, its use has been extended in Ithe one respect, by this court, and it would be difficult to find any sound reason why it should not be extended in the other. It is quite evident, that, if it becomes a question whether the court will exercise the jurisdiction conferred upon it, or decline to do so because the writ of mandamus may not originally have been intended for such use, we ought to follow the Constitution rather than the text writers, or even cases which have been decided by us, and in which this view of the matter was not considered.
*1282 In dealing with the subject of ithe exercise of its supervisory jurisdiction, and of the manner of its exercise, this court said, in State ex rel. Saizan vs. Judge, 48th Ann., 1501:
“In the exercise of its supervisory jurisdiction, the Supreme Court is not rigidly tied down to form; when the facts of a given case, being recited, present a case for relief under its supervisory jurisdiction, and the prayer is for such orders and decrees as those facts will justify, and for general relief, the Supreme Court will not remit the relator -to new, expensive, unnecessary, .and sometimes worthless remedies, simply by reason of a mistake, in the writ asked for.”
In the instant case there was absolutely no other remedy to which the relator could have been remitted; as the matter was brought to the attention of the court so late, that when it was able to take action, the moment for the contemplated sale had arrived.
It is not necessary that we should make any radical departure from established jurisprudence for the purposes of the question now under consideration. It is well settled that, when an injunction is dissolved on bond, and the plaintiff is refused an appeal from the order granting ithe dissolution, a mandamus will lie to compel the granting of the appeal; provided this court reaches the conclusion that such dissolution may work an irreparable injury. In order to reach this conclusion, however, it is necessary to review and reverse conclusions reached by the trial judge, who refuses the appeal upon the ground that the plaintiff will sustain no irreparable injury by such refusal. When, therefore, the mandamus issues, and he is ordered to grant the appeal, it may be said that it is, in effect, controlling his judgment, by mandamus, in a matter with respect to which he has exercised a discretion vested in him by law. The right of appeal is, in such a case, not absolute, but is granted, or refused, by the judge, as he may believe that the resulting injury will be irreparable or otherwise.
If, upon the other hand, iit be true, that a litigant is entitled to an appeal from any interlocutory order which may cause him irreparable injury, then it follows that if the defendant in injunction is refused an order to bond, and such refusal would cause him irreparable injury, he is as much entitled to an appeal, as is ,the plaintiff, from an order dissolving an injunct'on which he has obtained. But the appeal will do the defendant, in such a case, no good, since the injunc *1283 tion which inflicts the injury is not thereby suspended. And if he can obtain no other remedy, he must do without, although his opponent in the case would have a complete and adequate remedy, if similarly threatened.
A further question which is entitled to consideration is this: The Code of Practice provides a remedy by appeal for a case of threatened irreparable injury, and it has been left to the courts to determine when a- injury may be irreparable; this court having had occasion not unfrequently, to differ with the lower courts upon that subject. In White and Trudeau vs. Cazenave, 14 Ann., 57, it was held that the question must be determined “by the facts and circumstances of each case;” and, for the purposes of the case before it, the court said:
“The Article 566 of the Code of Practice allows an appeal where an order may work an irreparable injury; and it appears to us that an order which necessarily compels a party, in order to protect his rights, to institute another suit for the same cause of action is covered by this article.”
See also, Eltringham vs. Clark and Pringle, 49th Ann., 340; De la Croix vs. Villere, 11 Ann., 39.
From this point of view, it may well be said that, where affairs of great public magnitude and interest, which are being acted upon by the constituted governmental authority of a large city, are tied up, at the instance of a single citizen, or two citizens, claiming to act in the interest of the public at large, and by virtue, merely, of their ownership of property assessed at $2,000, the resulting injury may be irreparable.
But, even suposing that it is not absolutely irreparable, or not irreparable in the sense in which that word is used in the Code of Practice,' but that, nevertheless, it is serious. That it may turn out that the proceeding is an unwarrantable interference with public officers in the discharge of functions assigned to them by law and involving the exercise of legislative discretion over which the courts luxe no control. If, in such a ease, there is no remedy by appeal, ought not a remedy to be found in the grant of authority conferred upoi this court; or are the operations-of the city government to be stop! ed, irremediably, by any citizen who may differ with the city oihejals as to the expediency of an ordinance, or may make more serious charges against its action, without inquiry into the merits of *1284 <.h charges, or as to the responsibility of the citizens by whom they are made?
As has already been stated, this count has frequently held that a mandamus will lie to compel the granting of an appeal from an order dissolving an injunction on bond, and that, in such cases, it will look into the question of irreparable injury, and review the conclusions of the lower court thereon.
White and Trufant vs. Cazenave, 14 Ann., 57; State ex rel Dardenne vs. Judge, 28th Ann., 889; Beebe vs. Guinault, 29th Ann., 795.
“In State ex rel. Violett vs. Judge,” 46th Ann., 78, where the question was presented, it was said: “The fact stated by the judge, in his answer, that an order dissolving an injunction on bond is granted by a district judge in the exercise of a judicial discretion conferred on him by law, does not withdraw that order absolutely from being made the subject of review by this court.” * * * The plaintiff has the legal right to apply for a suspensive appeal from the order and on such an inquiry, (this court has necessarily to determine whether the judge’s discretion, which only extends, legally, to cases wherein the dissolution of the injunction would not work irreparable injury to the plaintiff, has been legally applied or not. If we find it has not, we grant relief, otherwise relator .takes nothing by his application to us; as has been said several times by this court, each case must stand 'or fall upon its own special circumtsance.”
In State ex rel. Lehmann vs. Judge, 46th Ann., 163, it is said in the syllabus:
“The powers of the Supreme Count, under Article 90 of the Constitution, are not confined to writs of certiorari, prohibition, mandamus, quo warranto, but extend to other remedial writs.”. And in the body of the opinion, we find the following:
“We think the rights of all parties are fairly guarded and protected iii this State under the discretionary powers of the district judges over' such questions, supplemented, as they are, by the supervisory control over inferior tribunals, which has been given to this court.”
In State ex rel. Oil Mill vs. Judge, 50 Ann., 766, this court said: “The whole issue before us on this application, is whether or not the conclusions of the district judge, that the act prohibited by the injunction which issued in this ease was not of a character to work *1285 irreparable injury to the plaintiffs at whose instance it was issued, and was, therefore, subject to be dissolved on bond, were well founded or not ? If they were, then his action in ordering the bonding of the injunction and in refusing to grant a suspensive appeal ¡therefrom must stand as against relators application.”
And in State ex rel. Moyse Bros. vs. Judge, 50th Ann., 492, where the District Court had issued a mandamus directing a justice of the peace to enjoin the consummation of a sale under execution, it was held that the proceeding was regular, and would not be interfered with.
In State ex rel. Murray vs. Judge, 86th Ann., 578, being an application for a mandamus to compel a District Court to grant an injunction, the judge a quo for answer and for cause why the writ should not issue, said:
“That he has declined the relief asked, after hearing the parties on a rule nisi; and that there is no suggestion in the petition that any process or writ has been applied for, or issued, by the defendants, for ¡the execution of the judgment, nor that they propose any action, except the general statement that they threatened to execute said judgment, without indication when it was to be done, or that any aation was contemplated except through the court; that if he has erred in the exercise of the discretion vested in him, his error can be revised on appeal only.”
Chief Justice Bermudez, as the organ of the court, referring to the Code of Practice, and disposing of the propositions presented by the return of the respondent judge, dealt with ¡the subject as follows:
“We find it distinctly stated that the object of the writ of mandamus is to prevent a denial of justice; thait the writ should therefore be issued when the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong or an abuse of any nature whatever. It arises, says the Code, at the discretion of the court, even where a party has other means of relief, if the.slowness of ordinary legal forms is likely to produce such .delay that the administration of justice may suffer from it. In cases like the present one, in which an injunction was refused in limine, after hearing on a rule nisi, it has been held that an-appeal lies, but it has never been decided that such an appeal, even if allowed as a suspensive one, would operate as the *1286 desired injunction would have done, had it been granted. Indeed it is hard, not to say impossible, to conceive how a suspensive appeal from a decree refusing an injunction can produce the effect of preventing the act which the injunction sought would have prevented, had it been allowed. * * * So that, if there be a remedy it is not an adequate one, and if a party entitled to an injunction is refused the same, he remains with a right but without a remedy, at the mercy of a district judge, unless this court can interfere and relieve him from the effect of a denial of justice. Where a clear case for an injunction is presented, it is the duty of the judge to grant the relief, líe has, tiren, no more discretion to exorcise than when a seasonable apirlication is made and a proper bond tendered for an appeal, is an appealable case. In such a case, it is manifest that justice and reason require that some mode should exist of redressing at once the wrong or the abuse of power on the part of the district judge, even if there be other methods of relief, or the slowness of ordinary legal forms would produce such a delay that the administration of justice may suffer from it.
' And so, in State ex rel. Gaynor vs. Judge, 38th Ann., 923, Mr. Justice Watkins, being the organ of the court, refers to the writ of mandamus, as being a writ, the object of which is “to prevent a denial of justice * * * and should therefore be issued in all eases where the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong, or an abuse of any nature whatsoever.”
And finally, in State ex rel. Lafitte vs. Judge, 51st Ann., 1768, being an application for a mandamus, to compel the respondent judge to grant an injunction, this court, referring to the ease of Bank vs. Webre, 44 Ann., 1083, and Chatard vs. City, 10 Ann., 752, said: “We affirm anew the doctrine of those decisions, it being always understood that the discretion 'so to be exercised by the lower judge is subject to review by this court in case of abuse of such discretion.” The whole question then resolves itself into this.. No one denies that this court may make orders and render decrees which will necessarily control the. discretion of the judges presiding in the inferior courts, but it is said that this can not be done by means of the writ of mandamus. Where, however, a ease is presented requiring the interposition of this court in the exercise of its power of control and *1287 general supervision, and no other adequate remedy suggests itself, the mandamus, as defined by our law, seems to be the appropriate writ to be used.
In the cases to which we have been referred; that of the Steamship and Lottery Company, in the 23rd Annual, was decided before the adoption of the Constitution of 1879; whilst in the others, in which it was held that a mandamus would not lie to compel the dissolution of an injunction on bond, it did not appear, as far as we can see, that the parties were left entirely without remedy, or that such serious consequences were possible, as in a case such as .this, where organized governmental authority is arrested in its action, with reference to a matter of public concern, which is still subject to legislative consideration and has not yet reached such definite shape as ito threaten injury to the individuals who complain, or to the public at large, whom they are undertaking to represent, and where the dissolution of the injunction can therefore work them no injury.
Blanchard, <7., dissents, filing written reasons.