STATE *ex rel.* FREELING, *Atty. Gen.,* v. KIGHT, *County Judge.*

No. 7339.    Opinion Filed October 12, 1915.

(152 Pac. 362.)

1. **PROBATE PROCEDURE.** By virtue of section 5347, Rev. Laws 1910, the Justices of the Supreme Court are given authority to prescribe such rules regulating procedure in probate matters as are necessary to carry the provisions of the Code into effect, and to prescribe such further rules consistent therewith as they may deem proper.

2. **COURTS—County Courts—Rules Regulating Probate Procedure.** Such rules when so prescribed apply to and are binding upon the county courts of this state, and such courts and the judges thereof are without power to dispense with the requirements of such rules, or to vacate and set the same aside, or to prescribe other rules in lieu thereof or in conflict therewith.

3. **COURTS—Supreme Court—Jurisdiction Over Inferior Courts.** By section 2, art. 7, of the Constitution (section 187, Williams' Ann. Const.), the Supreme Court is given jurisdiction to exercise a general superintending control over all inferior courts and all commissions and boards created by law, and this jurisdiction is a separate and distinct grant from its appellate jurisdiction.

4. **COURTS—Original Jurisdiction of Supreme Court—Mandamus —County Court—Rules Regulating Probate Procedure.** Under such jurisdiction of superintending control the Supreme Court may issue a writ of mandamus to the county court of Rogers county and to the judge thereof, commanding such court and

judge to vacate an order attempting to abrogate the rules prescribed by the justices of the court regulating procedure in probate matters, and to reinstate such rules and comply therewith in probate matters pending or hereafter begun in such court.

(Syllabus by the Court.)

Original mandamus by the State, on the relation of S. P. Freeling, Attorney General, against H. Tom Kight, County Judge of Rogers County, Okla. Writ issued.

*S. P. Freeling,* Atty. Gen., *J. H. Miley,* Asst. Atty. Gen., and *Owen Owen,* for plaintiff.

*John Q. Adams, Richard H. Wills, Crawford W. Cameron, C. B. Holtzendorff,* and *P. W. Holtzendorff,* for defendant.

HARDY, J. The state, upon the relation of the Attorney General, files an original petition in this court for a writ of mandamus, directed to the defendant, Hon. H. Tom Kight, as the duly elected, qualified and acting county judge of Rogers county, Okla., commanding him, as such county judge, to observe and obey certain rules of procedure in probate matters (other than rule 10, which has been superseded by statute) adopted by the Justices of the Supreme Court, on June 11, 1914, to be effective on the 15th day of July, 1914; which said rules by their terms were made applicable to Rogers county. Upon filing this petition an alternative writ was issued, and service of same accepted by said defendant. On May 11, 1915, said defendant filed his return herein, in which he admits the allegations of fact contained in the petition, but denies that it is his duty to observe and obey said rules, for the reason that said rules were not made in pursuance of section 5347, Rev. Laws 1910, and are legislative in their nature and beyond the power or function of the justices of this court to promulgate or enforce, and

asserts the power and authority of the defendant to adopt rules for the regulation and conduct of probate business in his court. On the 11th day of June, 1914, the justices of this court, in pursuance of section 5347, Rev. Laws 1910, met at the capital of the state, and after due consideration, promulgated and adopted rules 1 to 18, both inclusive, regulating the procedure in probate matters, and ordered that said rules should apply to this court and to the district courts, superior courts, county courts, and all other courts of record throughout the state in which they might be applicable, on and after the 15th day of July, 1914. These rules by their terms were applicable to the county court of Rogers county; and, as appears from the pleadings, Hon. Walter W. Shaw, county judge of that county, on the 5th day of June, 1914, had adopted said rules, prior to the time same became effective by order of this court, and after July 15, 1914, said rules were readopted, and continued in force until the 4th day of January, 1915, when defendant, as county judge of said county, made an order setting aside and vacating said rules theretofore adopted by his predecessor, and adopting in lieu thereof other rules, which are clearly in conflict with the rules promulgated by the justices of this court.

The authority of the justices of this court to adopt the rules in question is contained in section 5347, Rev. Laws 1910, which is as follows:

"The Justices of the Supreme Court shall meet every two years during the month of June, at the capital of the state, and revise their general rules, and make such amendments thereto as may be required to carry into effect the provisions of this Code, and shall make such further rules consistent herewith as they may deem proper. The rules so made shall apply to the Supreme

Court, the district courts, the superior courts, the county courts, and all other courts of record."

This statute was originally taken from Kansas, and has been considered several times by the Supreme Court of that state. At the time of the revision of the Code in 1910, minor changes were made in the language of the act, but in all substantial particulars it is the same as originally adopted; and, under this section, rules prescribed by the Supreme Court of Kansas have been sustained, which regulated the procedure in the inferior courts of that state. *Jones v. Menefee,* 28 Kan. 437; *Robitaille v. Furguson,* 4 Kan. 556; *Halford v. Coe,* 4 Kan. 561; *Coleman v. Newby,* 7 Kan. 82 (by a divided court).

By the language of this section, the justices of this court are given the authority to revise their general rules and make such amendments thereto as may be required to carry into effect the provisions of the Code, and to make such further rules, consistent therewith, as they may deem proper, and said rules, when so made, apply to all courts of record in this state. Said rules were of the kind and character authorized to be made by said section, and were not unreasonable nor in conflict with the statutes of this state, and it is expressly declared that said rules shall apply to the county courts within this state. The effect of the rules, when adopted by an appellate court and prescribed to govern procedure in inferior courts, has frequently been passed upon by the courts, and invariably held to be binding, and the question does not seem to us to admit of any controversy or argument.

The rule is stated thus in 6 Stand. Ency. Pro. p. 63:

"Rules have the force and effect of law, and are binding upon litigants, and upon counsel, upon the court and

its officers. A rule made pursuant to statutory authority by an appellate court to govern the procedure in inferior courts is binding upon the latter, and rules adopted by a board or convention of judges are binding on the individual judges."

And in the notes to this text are cited a great number of cases from many states in the Union. In fact, we do not know of any case where an appellate court is given authority by statute to prescribe rules regulating procedure in inferior courts which holds that such rules are not binding, or that the inferior court may disregard or set aside said rules. The same rule is announced in 18 Ency. P. & P. p. 1271, as follows:

"Although courts may sometimes dispense with the requirements of their own rules, it is uniformly held that they have no such power in regard to rules prescribed for them by a higher court."

We might cite case after case in support of this proposition, but deem it unnecessary. It was clearly without the power and authority of the defendant, as the judge of the county court of Rogers county, to vacate or set aside the rules theretofore prescribed by the justices of this court, and adopted by his predecessor. At the most, all that he had authority to do was to change, subject to approval by the justices of this court, the dates previously designated upon which certain matters would be heard, which he might change to suit his convenience and to facilitate the business of the court, in accordance with the rules that were adopted by the justices of this court. The order made by him on the 4th day of January, 1915, being a nullity and ineffective to abrogate the rules theretofore in force, it follows, of course, that said rules are still the only valid rules regulating procedure in probate matters,

and the defendant, being vested with no discretion in the matter as to whether he should comply with and obey said rules, was clearly under obligation to do so, as much as if they had been enacted by the Legislature.

The authority of this court to enforce obedience to said rules is questioned by the respondent. In his answer to the alternative writ he denies the validity thereof, and asserts his own authority to prescribe rules for governing the procedure in his court, and says that if this court shall be of opinion that the justices thereof have authority to prescribe said rules, and that same are binding upon him, and that it has jurisdiction to enforce obedience thereto by mandamus, he will comply therewith. We construe this language to mean that, notwithstanding we may be of opinion that the rules are valid, yet if we are not possessed of authority to enforce same by mandamus, he will not observe them.

Section 2, art. 7, Const. (section 187, Wms. Const.), defines the jurisdiction of this court as follows:

"The appellate jurisdiction of the Supreme Court shall be coextensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari,* prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same; and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law. * * * "

Similar provisions, with varying phraseology, are now found in the Constitutions of a number of the states, and it has been held that the grant of jurisdiction of a general superintending control over inferior courts is separate and in addition to the general appellate jurisdiction of the Supreme Court. *Attorney General v. Railroad Companies,* 35 Wis. 425; *State ex rel. Fourth National Bank et al. v. Johnson,* 103 Wis. 591, 79 N. W. 1081, 51 L. R. A. 33 (note); *State v. District Court of First Judicial District,* 24 Mont. 539, 63 Pac. 395; *State ex rel. Anaconda Copper Mining Co. v. District Court,* 25 Mont. 504, 65 Pac. 1020.

In *Matney v. King,* 20 Okla. 22, 93 Pac. 737, speaking for the court, Mr. Justice Kane said:

"This provision practically places the Supreme Court in the same relation to the inferior courts of the state as the Court of King's Bench bore to the inferior courts of England, under the common law."

—and quoted with approval from the opinion of Chief Justice Marshall in *Ex parte Crane,* 5 Pet. 190, 8 L. Ed. 92, discussing the supervisory powers of the Supreme Court of the United States over the proceedings of inferior courts by the writ of mandamus, according to the principles of common law. Originally the king himself sat in the Court of King's Bench, and took all the power to himself, until—

"the Normans growing up English, they became fond of those liberties and privileges which the English had enjoyed in the Saxon times. Hence it was necessary to introduce a new policy, and hence the original of our courts as we have them at this day in Westminster Hall." (2 Bacon Ab. Courts.)

The extent of jurisdiction of the Court of King's Bench is given by Blackstone, as follows:

"The jurisdiction of this court is very high and transcendent. It keeps all inferior courts within the bounds of their authority, and may either remove their proceedings to be determined here, or prohibit their progress below. It superintends all civil corporations in the kingdom. It commands magistrates and others to do what their duty requires, in every case where there is no specific remedy. It protects the liberty of the subject, by speedy and summary interposition. 3 Blackstone, Comm. 42. For it is the peculiar business of the Court of King's Bench to superintend all other inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers with which the Crown or Legislature have invested them, and this, not only by restraining their excesses, but also by quickening their negligence and obviating their denial of justice." (2 Blackstone, Comm. 111.)

In *Sikes v. Ransom*, 6 Johns. 279, in discussing a similar question, the Supreme Court of New York said:

"We have the general superintendence of all inferior courts; and are bound to enforce obedience to the statutes, and to oblige subordinate courts and magistrates to do those legal acts which it is their duty to do."

Under a similar provision the Supreme Court of Wisconsin held that the court might, by mandamus, compel an inferior court to perform a duty imposed by statute which is not discretionary in its effect, and might also compel action in cases where discretion was to be exercised, when it clearly appeared that such discretion had not in fact been exercised or that action had been taken in manifest disregard of it. *State ex rel. Fourth National Bank v. Johnson, supra; State v. Pollard,* 112 Wis. 232, 87 N. W. 1107.

And the fact that an appeal will lie, or that it becomes necessary to review judicial action, is not always an insuperable obstacle to the exercise of power of superintending control by mandamus in a proper case *(State ex rel. Fourth National Bank v. Johnson, supra; State ex rel. Anheuser-Busch Brewing Ass'n v. Eby,* 170 Mo. 497, 71 S. W. 52; *State ex rel. Umbreit v. Helms,* 136 Wis. 432, 118 N. W. 158); and it will be noted that this control given by the section quoted *supra* refers to inferior courts, commissions, and boards, and not to litigants or parties. It was not designed for ordinary appellate jurisdiction, but was in the nature of an original jurisdiction, conferring upon this court that authority necessary to keep subordinate courts, commissions, and boards within due bounds, and to insure a harmonious working of the judicial system within this state, according to due course of procedure *(People v. Richmond,* 16 Colo. 274, 26 Pac. 929), and in some states the courts have held that this superintending control is as broad as the exigencies of the case demand *(State ex rel. Bayha v. Phillips,* 97 Mo. 331, 10 S. W. 855, 3 L. R. A. 476; *State v. Dist. Court of First Judicial Dist.,* 24 Mont. 539, 63 Pac. 395); and where the writ issued in the ordinary course of the common law is not sufficiently broad or effective to accomplish the result necessary, the courts of some states hold that same will be enlarged or new writs will be devised to meet the particular needs of the case *(State v. District Court, First Judicial Dist., supra; State ex rel. New Orleans v. Civil Dist. Judge,* 52 La. Ann. 1275, 27 South. 697, 51 L. R. A. 71).

In the case before us it appears that the respondent has attempted to set aside and abrogate the rules prescribed by the justices of this court, and to prescribe in

lieu thereof other and different rules, at variance with and directly in conflict with the rules so abrogated; that he has been and is now in this proceeding urging and insisting upon his authority so to do. The rules prescribed by him are before us, and they are plainly an open challenge to the authority of the justices of this court to prescribe rules regulating procedure in the county courts, and defendant expressly denies the authority of this court to compel compliance therewith. Is this sufficient to authorize the issuance of the writ?

It appears that there are now pending in the county court of Rogers county, as shown by the briefs, between 1,250 and 1,500 probate cases; that in each of these cases the respondent is proceeding in disregard of the rules prescribed, and will thereby necessitate an appeal in each of these cases to compel compliance therewith, if the writ be denied, which might result in a reversal of said cases and a retrial in the county court of Rogers county, thus imposing a great and unnecessary burden upon litigants, and crowding the docket of this court, to the delay and detriment of litigants over the state generally who have business in this court. It is a matter of common knowledge that within the Indian Territory side of this state a large part of the land was owned by minors at the time it was allotted, and a considerable part of the remainder is owned by members of the various Indian tribes, who are under the guardianship of the United States, and that jurisdiction of the state courts over the lands of these Indian minors and wards of the government was granted by act of Congress, and accepted by the state. The rules prescribed for the regulation of probate procedure have been approved by the executive officers of the United

States government. Under these rules the United States, as guardian for its wards, is entitled to notice of certain steps taken in probate proceedings, and to be present by its probate attorney, and be heard when the interests of its wards are involved. The respondent in his answer admits that he has refused to give the notice required, and under the rules prescribed by him expressly refuses to permit the probate attorney as such to be heard in any pending matter. If this condition be permitted to continue in Rogers county the same condition may arise and prevail in other counties of the state, and interests of vast magnitude, especially in the oil and gas regions, may be affected and titles clouded by such irregular proceedings, thus increasing litigation to an unnecessary extent.

This presents a situation where the interests of the public are affected, and where it is proper for the state, on relation of the Attorney General, to intervene as a matter of *publici juris*, to require the respondent to vacate the rules adopted by him and comply with the rules prescribed for his guidance, and where we think the writ ought to issue, as no other remedy exists which would be adequate to meet the exigencies of the situation. It is therefore ordered that the writ of mandamus issue as prayed.

All the Justices concur.