STATE ex rel. WILLIAMSON v.
STATE ELECTION BOARD
et al.

No. 31254. March 9, 1943.

*135 P. 2d 982.*

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, First Asst. Atty. Gen., for plaintiff.

Wm. L. Cheatham, of Bristow, for defendants.

Ruby Turner Looper and Kittie C. Sturdevant, both of Oklahoma City, amici curiae.

GIBSON, V. C. J. This is an original action in the nature of mandamus instituted by the state on relation of the Attorney General for a mandatory writ requiring the State Election Board to issue in lieu of an alleged erroneous certificate a new one certifying to the Governor the results of a referendum election on a proposed amendment to the Constitution.

The proposed amendment was duly submitted to the people at the general election of November 3, 1942, pursuant to Senate Joint Resolution No. 18, S. L. 1941, and the Constitution and statutes governing such elections (sec. 1, art. 24, Const.; 34 O. S. 1941 §§ 14, 64). The object thereof was to amend section 3, art. 6, of the Constitution, defining the qualifications of certain major state officers.

The Attorney General as relator alleges that the certificate of the State Election Board certifying the results of the election on said measure to the Governor as directed by 34 O. S. 1941 § 66, and showing that the amendment had failed of adoption, was erroneous in that it was based upon incorrect returns certified to the board by county election officials.

According to the petition, the particular error referred to took place in a certain county wherein the election officials in attempting to make their returns to the state board pursuant to 34 O. S. 1941, §§ 22, 66, erroneously certified a larger number of electors as having voted at the election in said county than the number actually voting; that as a result of said error the State Election Board certified to the Governor a larger number of electors as having voted at the election than actually voted, and that the error if corrected would reduce the total number so certified sufficiently to insure the adoption of the measure as having received a majority of the votes of all electors voting at said election as by the Constitution required (sec. 1, art. 24). More specifically, the State Election Board in its certificate to the Governor as required by 34 O. S. 1941 § 66 certified that the total number of electors voting at the general election was 406,833; that 201,763 voted for the adoption of the measure, and 98,013 voted against its adoption; that the erroneous returns from the county aforesaid certified that 10,861 electors had voted in that county, whereas in fact only 4,956 electors voted, thus making the total number of electors voting throughout the state only 400,928, and therefore giving to the measure a clear majority as contemplated by the Constitution, that is, the portion of section 1, art. 24, supra, which provides:

"If a majority of all the electors voting at such election shall vote in favor of any amendment thereto, it shall thereby become a part of this Constitution."

The Attorney General in his brief in support of the petition to this court to assume original jurisdiction looks to section 2, art. 7, of the Constitution, extending the original jurisdiction of the court to the general superintending control over all inferior courts, commissions, and boards created by law, and its power thereunder to issue writs of mandamus, certiorari, quo warranto and other remedial writs, and to hear and determine the same. He cites also Clark v. Warner, 85 Okla. 153, 204 P. 929, wherein it was held as follows:

"The power of the Supreme Court to grant mandamus and to hear and determine the same as authorized by section 2, art. 7, of the Oklahoma Constitution, will be exercised only when the questions involved are publici juris, or when some unusual situation exists, whereby not to entertain jurisdiction would work a great wrong or result in a practical denial of justice."

As a matter of fact this court will assume original jurisdiction in any action in mandamus where the petition shows a clear right to relief, if the writ is to be directed to an inferior court, commission, or board as contemplated by the Constitution, supra. Whether the question involved is of common public interest, or whether the alleged injustice may be grievous or of minor degree, is of no particular importance in determining whether this court shall assume jurisdiction. In every case we either do or do not have jurisdiction, and the petition determines that question. Where the petition states no cause for relief it is insufficient to invoke the court's powers; if it shows a clear right to relief, our jurisdiction attaches as a matter of course, and a hearing on the merits is in order.

In this case we are asked to examine into the proceedings of the State Election Board with reference to its statutory functions in assembling the returns in a state-wide referendum election and its report of the results thereof to the Governor (34 O. S. 1941 §§ 22, 66), and to direct the board to reconsider its action and to correct an alleged error in said returns as received from the

county election officials, an error not appearing upon the face of those returns, but one that is allegedly made manifest by certain evidence not contained in the official returns.

The petition clearly sets out the error which, if true, would, on correction, change the result of the election. The state itself complains of this injustice that has come about by reason of the alleged error. But the mere allegation of a wrong suffered by the people is not sufficient to invoke the judicial powers of this court to order rectification thereof by remedial writ. It is said that for every wrong there is a remedy. That is fundamentally true, but, in addition to the wrong, it must appear that the remedy pursued is authorized by law, or calls forth the inherent power of the court.

The petition further shows that the election board had fully performed its statutory functions, and the matter finally closed as a ministerial act. We say that the functions of the board in such case are wholly ministerial and require no discretionary action. It takes the returns as received from the counties and from the face thereof prepares the certificate to the Governor showing the results. When that is accomplished in good faith and without error the board's duties are fully and finally performed and the matter closed. It cannot be compelled to recanvass the original returns by the aid of evidence outside those returns subsequently submitted. No judicial power to ascertain the results from outside evidence is conferred. In Roberts v. Marshall, 33 Okla. 716, 127 P. 703, it was said:

"The authority conferred and duty imposed by the statute upon the State Election Board is to ascertain the result of the vote for the candidate for any office by canvassing the vote cast in each county as shown by the abstract of votes from each county certified by the county election board to the state board. No judicial power is conferred for ascertaining such result from any other papers or other evidence. Its duties are ministerial, and it cannot hear evidence aliunde the returns or go behind the returns, regular and valid upon their face, for the purpose of determining whether the election officers of the county have irregularly or fraudulently canvassed the returns of any county."

That action involved the recanvass of returns in the election of state officers, but the decision therein well applies here.

Neither the Constitution nor legislative enactment has authorized this court to compel the State Election Board to reconvene and recanvass by aid of outside evidence the returns of initiative and referendum elections. Nor is this court authorized to entertain and conduct an original proceeding in the nature of an election contest.

In State ex rel. Hayman v. State Election Board, 181 Okla. 622, 75 P. 2d 861, relief was sought by way of certiorari to review the action of the State Election Board in a similar case. The relators in that case denominated their petition as one for writ of certiorari to review the action of the election board, but this court declined to consider it as such, saying that the action of the board could not be so reached and corrected. It was there said that the courts may determine in a proper proceeding whether the Constitution has been amended. Thereupon we proceeded to consider the petition as one to contest the election by the introduction of evidence outside the certified returns of the election officials of the respective counties, and held in effect that even assuming that the election could be so contested, the petition and the evidence submitted were insufficient to show that the measure had received the required majority at the polls.

On casual inspection of the Hayman Case it might appear that we had assumed jurisdiction of a proceeding of this character, and had determined the same upon the merits. But that was not done, as the language of the court will disclose. In considering the petition as one to contest the election, or to make

the returns speak the truth, the court said:

"Relators contend that there are errors in said certificates in that in 81 precincts, scattered throughout various counties of the state, they have ascertained by an individual investigation, and by evidence aliunde the election returns, that a less number of voters voted in said precincts than were certified by the county election boards to the State Election Board. However, relators point out no statutory proceeding for correcting such certificates, either by proceedings before the State Election Board or in any other manner. Should there be such errors, certainly this court in this kind of proceeding is not the forum for correcting such errors. For this court to enter upon a determination of such questions, many additional parties, other than the State Election Board, would be necessary parties to this proceeding, and this action, which relators denominate a writ of certiorari (which we do not determine), would be resolved into a glorified election contest, casting doubt and uncertainty upon the result of the canvass of the votes as to every state officer and state question upon which the people of the state as a whole vote. We cannot concede that such evidence aliunde is permissible in this proceeding in this forum."

The courts may have jurisdiction to determine whether the Constitution has been amended, but not in total disregard of the final action of the State Election Board performed in strict conformity to law. We do not say that its mistakes, its arbitrary or fraudulent actions, may not be corrected by original proceedings in this court. But the board is not charged with mistake or wrongful act of any kind in the performance of its duties.

It is said in the brief amici curiae that the returns of an election held pursuant to section 1, art. 24, of the Constitution, as was the case here, are not governed by 34 O. S. 1941 § 22, which requires that the county election board "transmit to the State Election Board a certificate showing the total number of votes cast at any such election," but are governed by 26 O. S. 1941 § 368.

The latter section provides that the counters in each precinct shall prepare a certificate showing the total number of votes cast for each candidate appearing on the county ballot, and a certificate showing the total number of votes cast for each candidate on the state ballot, and that duplicates thereof be transmitted to the county election board, whereupon those duplicates become "the returns to the county election board." It is also provided that a duplicate certificate pertaining to the total number of votes cast for each candidate on the state ballot be transmitted to the State Election Board.

The amici curiae take the position that a like certificate on the state question is also prepared in each precinct and transmitted to the State Election Board and that they constitute election returns that must be taken into account and considered by the state board in certifying the results to the Governor. It is insisted that the counters' certificates and not the county election board's certificates are made prima facie evidence of the correctness of the precinct vote, and that the state board must determine from them the total number of electors voting in the election. It is said that the counters' certificates more truly reflect the total number of electors voting than do the county election board's statements. The amici curiae seem to believe that the counters' certificates are controlling over the certificates of the election boards.

But the argument ignores the fact that section 368, above, applies specifically to election of officers, while section 22 applies specifically to initiative and referendum elections. Section 22 was enacted in 1910, and, contrary to counsel's contention, the title to the act shows that it was made to apply to all elections on proposed constitutional amendments.

Said section 22 requires that the counters in each precinct transmit to the county election board a certificate of the total number of electors voting at the elections. The county board is required to keep a record thereof by pre-

cinct and to certify to the state board the total number of votes cast. Those certificates constitute the official returns, and a proposed amendment must receive a majority of the votes so certified if it is to become effective. And, as provided by 34 O. S. 1941 § 66, the state board must determine the election results from those returns and certify the same to the Governor.

It is strongly insinuated that the State Election Board was hostile to the proposed amendment, and willfully avoided its alleged duty to canvass the counters' certificates as the true returns. But the presumption of willful disregard of duty, even where performance is lacking, has no place in the determination of questions such as this. One who is permitted to appear in any cause as friend and advisor of the court should confine his efforts to the real merits of the controversy.

The petition is insufficient to entitle the relator to any relief in that it shows on its face that the Election Board made no error, and in every way performed its duty as by law required. The petition is therefore insufficient to invoke the powers of the court. The law does not authorize this court to interfere with a ministerial act of an officer after the performance thereof where such officer made no mistake or committed no unlawful act.

The writ is denied and the petition dismissed.

RILEY, OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur. CORN, C. J., and HURST and ARNOLD, JJ., dissent.

———

RILEY, J. (concurring specially). By this orginal action exercise of a superintending power over the State Election Board is sought in an instance where it has acted, upon returns made to it which are deemed prima facie correct, to certify failure of a constitutional amendment involving women's right to hold major state office.

Evidence is tendered here to show error in the number of votes returned as being cast in Grady county which, if true, would change the result of the vote upon the proposition.

No proclamation of the Governor as to the result of the vote upon the proposition is presented (Title 34, § 66, O. S. 1941), and no effort is shown to have been made to secure either the state's or county election board's action to correct the purported error.

This court is without power to substitute its determination of the result of the election for that of the agency created and existing for that purpose.

GIBSON, V. C. J., and OSBORN and BAYLESS, JJ., concur.

———

WELCH, J. (specially concurring). The result of this decision is that there is no power, authority, or right in this court to order the State Election Board to reconvene, and set aside or cancel its former certificate as to the result of a state-wide election, and to issue a new certificate to the opposite effect.

I am loath to accept such a result in such a case as this, where it seems that one of the county election boards made a clear error in certifying the number of electors voting in the county. But there seems to me to be no justifiable alternative.

This is in no sense a procedural matter, nor a mere technical deficiency in corrective practice or procedure, or the like. If that were all, we could easily brush aside every objection, and do our best to hear every claim of election error, and then by order require that to be done as to each county and precinct election return which we thought ought to be done. But the first question here is one of the right and power of this court to so control a state-wide election. While this court must act courageously on every question in which it has authority, it must just as steadfastly refuse to arrogate to itself powers it does not have. It is intolerable that any state officer, judicial,

executive, or legislative, should exercise force or power without authority so to do. And that power or authority, which is not authorized and legal, is not made legal merely by being exercised. In fact, the illegal exercise of power by one in authority is the more intolerable by reason of the position of the one so purporting to use it. It would be so if this court acted otherwise in this case.

This court cannot exercise any control over state-wide elections or the result thereof unless such authority is conferred on the court by the Constitution or statutory laws of the state, or is conferred by clear implication arising from the language of the Constitution or statutes. This court cannot confer such power on itself by its own decision or order.

The Constitution and statutory laws confer no such power on this court to control the certificate of result of such an election as this. That power is conferred exclusively on the State Election Board, and the law further provides the time and manner and method for the exercising of such power by the State Election Board, and further provides as to the county certificates upon which the state certificate is based. The law does not undertake in any manner to confer power on any state official or department of government to observe or determine error in the figures of any county or precinct, and thereupon to order the State Election Board to issue a new certificate changing its formerly certified result of an election such as this. Such power should not be permitted to be assumed by any other state official or department of government, and such authority in all probability would not be conferred upon any state official, or upon this court, even by legislative enactment, without at the same time placing definite restrictions upon the time and manner of the exercising of such power.

If this court should now assume to exercise such power and upon the error in one county should order the State Election Board to reconvene and change the formerly certified result of this election, the logical result would be to authorize the court at any later day to consider an error in any other county, and if there was such an error in sufficient amount or number, to then order the State Election Board to convene again and to again change the result of the election by a new certificate of result. Thus there could be no finality to the result of an election on a constitutional amendment. Because any certified result made by the State Election Board would only be final until the next order of this court. However much we would desire to correct any and all such errors whenever they are brought to our attention from any county or precinct in the state, we must say that we have no authority or power whatever to do so.

Our laws definitely direct and empower the State Election Board to certify the result of such an election as this and provide for finality thereof and proclamation thereon. When that board has so acted, in good faith, and correctly, upon the records and county certificates before it, without fraud or mistake on the part of that board, then there is no escape from these conclusions: (1) That the law intends a time and manner of bringing finality to the result of an election such as this; (2) That this court has no power to check the result of the election in any county or precinct and then order the State Election Board to change its certified result of such an election to a different result which we conclude it should certify; (3) That if the power so to do is to be conferred on this court or upon any state official or department of government, it must be done by an enactment expressly providing therefor.

All our elections are most carefully conducted, and they should be wholly free from any error. But when errors occur they must be corrected in some manner provided therefor and known in advance as an authorized check thereon, not by an unwarranted assumption of power, by this or any other court, to do it by so-called judicial order.

The opposite rule would place in this court for all time the absolute control of such a state election, and the power to say the final word as to the result of each such election. There is nothing to indicate that such a situation could ever have been intended. Certainly we cannot decree such a result by our order in this case.

I am authorized to say that Mr. Vice Chief Justice GIBSON and Justices OSBORN and DAVISON also concur in these views.

———

HURST, J. (dissenting). The question presented is whether this court should assume original jurisdiction, bring before it all the parties necessary for the complete determination of the cause, ascertain the facts as to whether the proposed amendment received the constitutional majority required for its adoption (sec. 1, art. 24, State Constitution), and, if it is found that it received such majority, make such orders as may be necessary to carry into effect the will of the people. I think this question should be answered in the affirmative. If, as the county election board of Grady county certified, 10,870 votes were cast in that county at the November, 1942, election, the proposed amendment failed to receive the required constitutional majority. But if only 4,945 votes were cast in that county, as the Attorney General alleges and the defendants do not deny, then the proposed amendment received the constitutional majority required for its adoption.

A mixed question of fact and law is presented. In the final analysis, the determination of whether a proposed constitutional amendment has been adopted calls for the exercise of a judicial function, which should be exercised where, as here, jurisdiction is properly invoked. State v. State Board of Equalization, 107 Okla. 118, 230 P. 743.

Section 6, art. 2, of the State Constitution provides that "the courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong . . .;

and right and justice shall be administered without sale, denial, delay, or prejudice." This is a broad statement of public policy, found in the Bill of Rights, to which the courts should, where possible, give effect.

By section 2, art. 7, of the State Constitution there is conferred upon this court four grants of power or jurisdiction: (a) appellate jurisdiction: (b) "general superintending control over all inferior courts and all commissions and boards created by law"; (c) "power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same"; and (d) "such other and further jurisdiction as may be conferred upon it by law." A similar constitutional provision is found in the Constitutions of many of the other states. State v. Kight, 49 Okla. 202, 152 P. 362; 112 A. L. R. 1352-1356. The power of superintending control and the power to issue and hear and determine such writs, given this court by said section, are separate and distinct, and neither qualifies or limits the other. 14 Am. Jur. 462; 112 A. L. R. 1359, note. This section, insofar as it gives this court original jurisdiction to issue the named writs and to exercise superintending control, is self-executing.

The majority opinion, in effect, holds that because of procedural deficiencies, this court is without jurisdiction to correct the wrong complained of. I cannot agree. The county election board of Grady county could be made a party to this original proceeding, if that is deemed necessary, and compelled to assemble and certify the correct returns, or this court could take evidence as to the true number of votes cast, and direct the State Election Board to again tabulate the total votes cast throughout the state, including the number of votes found to have been actually cast in Grady county, and to again certify the result of the election on the amendment. The power of superintending control is very broad (Matney v. King, 20 Okla. 22, 93 P. 737; Kelly v. Kemp, 63 Okla.

103, 162 P. 1079) and its exercise rests in the sound discretion of the court. Loeb v. Collier, 131 La. 377, 59 So. 816; 112 A. L. R. 1356, note. This court has the inherent and implied power to do whatever may be necessary to carry out its power of superintending control. And the question of whether the court will in a given case exercise its power of superintending control "is one of judicial policy rather than one relating to the power of the court." Re Phelan, 225 Wis. 314, 274 N. W. 411, 112 A. L. R. 1345. In 112 A. L. R. at page 1357, in the annotation, it is said that "the power of superintending control is not limited by forms of procedure or by the writ used for its exercise." And in the same volume, at page 1356, in the annotation, it is said:

"The power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur, it will be found able to cope with them. And, if required, the tribunals having authority to exercise it will, by virtue of it, possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted."

For this court to refuse to hear this case on its merits and to give such relief as the facts may warrant is to disregard the mandate that there shall be a "remedy afforded for every wrong" as provided by section 6, art. 2, above, and to refuse to perform its constitutional function of superintending control. Where fundamental public rights, such as the right of the people to amend the Constitution, are involved, this court should not, because of technicalities in procedure, proclaim its inability to right serious wrongs where, as here, its jurisdiction is properly invoked. The powers given by section 2, art. 7, above, were designed for the very purpose of giving this court "original jurisdiction in all judicial questions affecting the sovereignty of the state, its franchises or prerogatives or the liberties of the people." 7 R. C. L. 1075; 14 Am. Jur. 457. See, also, State v. Frear, 148 Wis. 456, 134 N. W. 673, L. R. A. 1915B, 569. It is true that this court should scrupulously refrain from usurping power, but the converse is also true—it should certainly exercise the powers given it by the Constitution, especially where, as here, by so doing it may prevent the defeat of the will of the people of the state because of a purely technical error in tabulating or certifying the election returns in a single county. To do the one is no worse than to refuse to do the other.

My views on this general question were fully expressed in State ex rel. Hayman v. State Election Board, 181 Okla. 622, 75 P. 2d 861, and I need not repeat them here.

I think this court has the power to give relief both under its power of superintending control and under its power to issue a writ of mandamus "and to hear and determine the same," and that it should do so. I therefore dissent to the majority opinion.

CORN, C. J., and ARNOLD, J., concur in this dissent.

———

ARNOLD, J. (dissenting). If we are to determine this case strictly within the record presented and contentions made by the parties, the conclusion arrived at by the Vice Chief Justice, author of the majority opinion, is inescapable, but I think in a matter of such vital public concern this court should go further and take such steps, within the purview of our constitutional powers and directions necessarily implied, as will promote justice, preserve the integrity of our election laws, and correct such very grievous errors as herein alleged, which if permitted to stand would defeat the expressed will of the people.

I concur in the views expressed by HURST, J., in his dissent.