**CARLILE et al. v. NATIONAL OIL & DEVELOPMENT CO. et al.**

No. 10279—Opinion Filed May 10, 1921.

Rehearing Denied Oct. 11, 1921.

Motion for Leave to File Second Petition for

Rehearing Denied Oct. 25, 1921.

(Syllabus.)

**1. Courts—Jurisdiction—Essentials.**

Jurisdiction is the authority to hear and determine, and in order that it may exist the following are essential: (1) A court created by law, organized and sitting; (2) authority given it by law to hear and determine causes of the kind in question; (3) power given it by law to render a judgment such as it assumes to render; (4) authority over the parties to the case if the judgment is to bind them personally as a judgment in personam (against the person), which is acquired over the plaintiff by his appearance and submission of the matter to the court, and is acquired over the defendant by his voluntary appearance, or by service of process on him; (5) authority over the thing adjudicated upon by its being located within the court's territory, and by actually seizing it if liable to be carried away; (6) authority to decide the question involved, which is acquired by the question being submitted to it by the parties for decision. (Roth v. Union Nat. Bank, 58 Okla. 604, 160 Pac. 508; 10 Mod. Am. Law, 501.)

**2. Guardian and Ward—Powers of Guardian—Modification of Oil Lease—Validity—Action to Cancel—Pleading.**

A suit is brought to cancel a contract, or what was called a stipulation, and to declare void an order of a county court confirmatory of such stipulation, and a demurrer is filed questioning the sufficiency of the petition filed therein, and a motion for judgment on the pleadings is also filed therein, and the trial court sustains the demurrer and motion for judgment on the pleadings and exceptions are saved to the action of the trial court and an appeal is brought to this court; the question, therefore, before the court is as to the sufficiency of the petition and pleadings.

In said suit the petition of the plaintiff below, besides attacking the judgment of the county court confirming the stipulation extending an oil lease upon the grounds of extrinsic fraud, alleged in substance, in addition to the charge of fraud, that the proceeding in the county court was, in fact, a sale of a minor's oil interests under a pretense of being merely a modification of a prior and subsisting oil lease, and that the proceeding is void because the court failed to comply with the procedure provided in rule No. 9, promulgated by the Supreme Court June 15, 1914, and fixing the procedure to be followed in the sale of oil and gas leases of wards in the county courts. The petition alleged the execution of the stipulation by the guardian and alleged the making of an order confirming the same by the county court and plaintiff attached to the petition copies of the stipulation and of the order confirming same, and made them a part of the petition. An examination of the copies of the stipulation and order confirming the same attached to the petition shows upon their face that they were not what they purport to be, a modification of the terms of a subsisting lease and such modifications to be executed within the term of a subsisting lease, but were in effect an extension of the term of the subsisting lease beyond the term thereof and as long as oil was produced thereafter in paying quantities, and the order confirming the stipulation upon its face, when considered in connection with the stipulation, shows a direction by the court to the guardian to enter into the stipulation with the lessee of the subsisting lease at a consideration fixed in the order of the court directing the execution or else, as provided in the stipulation presented to the court at the time the directing order was made; and that the stipulation and the order confirmatory of the same upon their face negative the conclusion that there could have been any competitive bidding or that there was a compliance with rule No. 9 of the Supreme Court above referred to. Held, that the transaction constituted a sale of the minor's oil interests, and the record showing upon its face, a failure to comply with the procedure provided by rule No. 9 of the Su-

preme Court of this state, promulgated by the Supreme Court June 15, 1914, the same is void and of no effect, and that it was error for the trial court to sustain the demurrers and the motion for judgment on the pleadings.

### 3. Parties—Substitution—Action to Cancel Oil Lease Contract—Transfer of Plaintiff's Interests.

In an action to cancel an oil and gas stipulation or contract modifying and extending the terms of an oil lease, such action does not abate by the transfer of any interests of the plaintiff therein during the pendency of the suit, and, if the plaintiff has transferred his interests, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action.

### 4. Infants—Contracts—Validity—Disaffirmance.

Under the laws of this state a minor, after he arrives at the age of 18 years, cannot give a delegation of power or appoint an agent, but any other contract a minor can make, after arriving at the age of 18, and such contract is not void, but merely voidable. And after he arrives at his majority he may disavow the contract within one year, or he may ratify such voidable contract, but such contracts as are held absolutely void he cannot ratify, and this is upon the theory that such contracts are non-existing, since void, and there is nothing to be ratified.

On Rehearing.

### 5. Courts—County Courts—Rules Regulating Probate Procedure—Binding Force.

The rules of the Supreme Court relating to probate procedure promulgated June 15, 1914, by virtue of section 2, article 7, of the Constitution and section 5347, Rev. Laws 1910, are binding upon the county courts of this state, and such courts and judges thereof are without power to dispense with the requirements of such rules, to vacate and set the same aside, or to prescribe other rules in lieu thereof or in conflict therewith.

### 6. Same.

The rules of court made pursuant to statutory authority of an appellate court to govern the procedure in inferior courts have the force and effect of law and are binding upon litigants and upon counsel, and upon the court and its officers.

### 7. Same—Construction of Rules.

In determining whether rule 9 of this court [47 Okla. xvi], made pursuant to constitutional and statutory authority, was intended to be mandatory or directory, we must apply the same rules of construction that are applicable to construction of constitutions and statutes.

### 8. Statutes—Construction — Rational Interpretation.

A statute should receive a rational, sensible interpretation, one which tends to avoid or remove the mischief at which it was leveled and to accomplish the object sought by the legislative body which enacted it, rather than one which promotes or permits the evil and avoids the accomplishment of the purpose of the enactment.

### 9. Courts—Rules of Probate Procedure — Approval of Mineral Lease on Minor's Land.

Rule 9 [47 Okla. xvi], promulgated by this court by virtue of constitutional and statutory authority, requiring that no oil and gas lease upon the land of a minor should be approved unless sold in open court to the highest and best bidder as provided in said rule, was promulgated for the minor's protection, pursuant to a general principle of public policy for the protection of minors.

### 10. Same—Noncompliance With Rule—Validity of Lease.

A sale of an oil and gas lease upon the lands of a minor through the probate court which is not in substantial compliance with rule 9 of this court [47 Okla. xvi] is void.

Error from District Court, Washington County; R. B. Boone, Judge

Action by Levi Carlile and another against the National Oil & Development Company and another to cancel contract modifying oil lease on minor's land. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

George T. Brown, B. B. Blakeney, J. H. Maxey, and Hubert Ambrister, for plaintiffs in error.

J. T. Shipman and Burford, Miley, Hoffman & Burford, for defendants in error.

Geo. S. Ramsey, Edgar A. De Meules, Malcolm E. Rosser, Villard Martin, James B. Diggs, Edw. H. Chandler, Summers Hardy, and Wm. O. Beall, amici curiæ.

ELTING, J. This action was begun by Levi Carlile and B. E. Capps, plaintiffs in error herein and plaintiffs below, against the National Oil & Development Company and the Prairie Oil & Gas Company, defendants in error herein and defendants below, by filing a petition in the district court in Washington county, state of Oklahoma, the 31st day of January, 1918. Levi Carlile alleged in his petition that he brought the suit in his own behalf, as his interest in the petition appeared, and also prosecuted it in his name for the use and benefit and on behalf of his co-plaintiff, the said B. E. Capps, as the interest of the said Capps in and to the subject-matters appeared in said petition. Levi Carlile is alleged in the petition to be a citizen by blood of the Cherokee Tribe of Indians and duly enrolled as a citizen of one-sixteenth blood, and that he reached his majority on

the 14th day of September, A. D. 1917. That the land in controversy and involved in the oil lease is his distributive share of the lands of the Cherokee Tribe of Indians, and is described as the north half of the northeast quarter, section 14, township 27 north, range 13 east, and for which he received a patent. That the said Levi Carlile, after he became of age, and on to wit: October 10, 1917, for a good and valuable consideration, made an oil and gas lease, covering the lands to the other plaintiff, B. E. Capps, and that he granted to the said Capps seven-eighths of all oil rights and mineral rights thereon from and since the 13th day of September, 1917, and that since the execution of said lease the said Capps was seized and possessed of the exclusive rights to enter upon, operate, drill, and develop same for petroleum and gas; and that one-eighth of said oil interest was reserved to the said Levi Carlile.

The plaintiffs asked to have the defendants enjoined from continuing to operate and extract oil and gas from the said lands and convert the same to their own use, to the great, irreparable, and continuing damage to the plaintiffs, and alleged that they had no adequate remedy at law, and hence asked for injunction.

As a second cause of action, the plaintiffs allege that on the 7th day of October, 1905, Thomas J. Carlile, the duly appointed, qualified, and acting guardian for the plaintiff Levi Carlile, entered into an oil and gas lease with the defendant, National Oil & Development Co., and that the said lease was for a term of years beginning October 7, 1907, and ending September 13, 1917, and during the minority of the said Levi Carlile, for the purpose of developing and extracting oil from said lands. That under said lease the said defendant drilled 32 oil wells, from which it did, during the term of its lease aforesaid, produce and market great quantities of petroleum and natural gas. That on or about the 21st day of February, A. D. 1917, the defendant National Oil & Development Company, through its agent, one Humphrey, procured from Thomas J. Carlile a purported stipulation modifying the terms of the former lease so that it would continue for a term of years during the minority of the said plaintiff, Levi Carlile, and to September 13, 1917, and as long thereafter as oil and gas was produced from said land in paying quantities by the lessee, its successors or assigns.

That on the same day or the day following the one on which the stipulation was procured, J. D. Cox, county judge of Cherokee county, Oklahoma, made a confirmatory order confirming and approving said stipula-tion. That said stipulation was in words and figures as follows:

"Whereas, Thomas J. Carlile, of Tahlequah, Oklahoma, as guardian for Levi Carlile, a minor, and National Oil and Development Company, of Bartlesville, Oklahoma, as lessees, entered into an oil and gas mining lease dated October 7th, 1905, covering the following described tract of land situated in Washington county, Oklahoma, to wit:

"The N. ½ of the N. E. ¼ of sec. 14, twp. 27 N., R. 13 E. containing 80 acres, more or less, and

"Whereas, the present owner of said lease and the owner of the said described land desire to amend, change and modify certain terms of said contract.

"Now, therefore, in consideration of one hundred dollars, the receipt whereof is hereby acknowledged by the lessee hereinafter contained, said lease is hereby modified in the following particulars to wit:

"1. The term of said lease is extended to September 13, 1917, and as long thereafter as oil or gas is produced therefrom in paying quantities by the lessee, its successors or assigns;

"2. The royalty on oil produced from said land to be paid to the lessor is hereby increased from one-tenth to one-eighth;

"3. The lessee agrees that within thirty days from the execution hereof it will install a vacuum pump for the purpose of putting a vacuum on said lease, and will connect the wells located on said land above described to said vacuum pump, and will thereafter operate said wells under a vacuum.

"In witness whereof, the parties hereto have hereunto affixed their signatures this 20th day of February, 1917.

"(Signed) Thos. H. Carlile, as
"Guardian of Levi Carlile, a minor.
"National Oil & Development Co.,
"By G. J. Humphreys, Agent."

"Acknowledged, February 20th, 1917, by Thomas H. Carlile, as guardian of Levi Carlile, a minor, before J. W. DeMoss a notary public, Cherokee county, Oklahoma."

That the confirmatory order was in words and figures as follows:

Abstract of Court Order.

"On this 21st day of February, 1917, the guardian herein presents for confirmation and approval the stipulation modifying the terms of the oil and gas mining lease heretofore entered into on the 7th day of October, 1905, by Thomas J. Carlile, as guardian of said Levi Carlile, with the National Oil & Development Company, said stipulation having been executed by said guardian on the 20th day of February, 1917, and said stipulations providing for the modifying of the terms of said oil and gas mining lease so that the term of said lease is extended until the 13th day of September, 1917, and

as long thereafter as oil and gas is produced on said land in paying quantities by said lessee, its successors and assigns, and providing for the increase of the royalty on oil produced, payable to the lessor from one-tenth to one-eighth, and further providing that within thirty days from the execution thereof that said lessee company connect the wells on said land with a vacuum pump, and said stipulations having been executed in pursuance of the order made and entered herein on the 20th day of February, 1917, and

"The court having examined said stipulation, and heard evidence on the same, and it appearing that the same is in proper form, that a valuable and fair consideration has been paid the lessor therefor, and that the order and direction of this court has been fully complied with, the court being well and sufficiently advised in the premises.

"It is ordered and adjudged by the court that said stipulations be and the same hereby is in all things hereby ratified, approved and confirmed.

"Done at Tahlequah, Oklahoma, within the county of Cherokee, state of Oklahoma, this 21st day of February, 1917.

"(Signed) J. D. Cox, County Judge
of Cherokee County."

That copies of the said stipulation and confirmatory order were attached to and made a part of the petition.

The plaintiffs further alleged that the stipulation and confirmatory order was null and void by reason of the false and fraudulent representations made by the representative of the lessee, the National Oil & Development Company, to the guardian of the plaintiff Levi Carlile, whereby he was induced to execute such stipulation, and which representations were as follows:

"That said agent of said defendant did then and there represent and state to said guardian that the lease of said defendant would shortly expire, and that upon the expiration thereof, unless said defendant procured a new lease, or an extension of the old lease, it would dismantle said lease and all the equipment thereon, pull all of the casings from said oil wells and thus destroy the same; and that in the meantime the vacuum pumps were to be placed on the oil wells on the adjoining property to said lands, and that the defendant would not put vacuum pumps on the wells operated by it on the lands of said Levi Carlile unless it procured an extension of said lease, and that by reason whereof, the adjoining leasehold operators would thus drain the oil under the lands of the plaintiff, Levi Carlile, so that within thirty days his lease would become unproductive and dry."

They alleged, further, that said representations were false and untrue and the agent knew them to be untrue. They alleged, further, that said leasehold interest was reasonably worth the sum of $15,000, and that by reason of the said false representations, the guardian was induced to grant said lease for the sum of $100, and an increase of royalties from one-tenth to one-eighth and such consideration being so grossly inadequate as to shock the conscience, that the lease is also void for that reason. They alleged, further, that the same representations were made to the county judge as were made to the guardian, whereby he was induced to make the confirmatory order.

It was further alleged and contended that the order of the court, confirming said extension, was void in that there was a failure to comply with rule No. 9 of the rules of procedure in probate matters, adopted by the Supreme Court of Oklahoma, and in such cases made and provided and effective July 15, 1914 (47 Okla. xiv). That said rule No. 9 reads as follows:

"9. No oil and gas, or other mineral lease covering lands belonging to minors or incompetents will be approved except after sale in open court to the highest and best responsible bidder. All petitions for the approval of oil and gas leases shall be filed at least five (5) days before same are to be sold as provided herein, and notice of such sale must be given by posting and by publication where publication is practicable and shall be on_____of each_____."

The petition then alleged facts showing the production of oil by the company, and prayed for an accounting for the oil and gas removed from the lands, asking that the title of the plaintiffs in and to said lands and leasehold interest be quieted in the plaintiffs and that the defendants be enjoined from entering into and upon said lands, and that a receiver be appointed to take charge of said lands and the oil and mining rights pertaining to the same, and for all proper and just relief.

To the said petition the Prairie Oil & Gas Company filed a demurrer. The National Oil & Development Company filed a separate answer, containing a general denial of everything except what was specifically admitted, and setting up their compliance with the provisions of the stipulation, and that they installed the vacuum pumps called for therein, and were operating the same. The answer further alleged that the plaintiff herein had ratified said extension stipulation by accepting the royalties provided for therein and other benefits thereunder after becoming of age.

To the separate answer the plaintiff, Levi Carlile, filed a reply, denying the acceptance of any royalties thereunder, or the benefits of said contract, and hence he had not ratified the same. Levi Carlile alleged, further, in his reply that he had, before receiving any royalties under said stipulation, disavowed said contract and had filed suit in the county court of Cherokee county, Oklahoma, and followed it up by filing the present suit.

On May 10, 1918, the National Oil & Development Company filed a supplemental answer, in which they alleged that on March 5, 1918. Levi Carlile executed to John H. Kane, of Bartlesville, Oklahoma, a general warranty deed conveying to him the lands covered by the lease in controversy in this case, for and in consideration of the sum of $9,000; that said deed was duly recorded. They alleged, further, that the said Levi Carlile executed and delivered to the said John H. Kane a transfer order, transferring to the said John H. Kane all of the one-eighth royalties on oil produced on said premises by the defendant, operating under and by virtue of the said lease and the stipulation mentioned in the plaintiffs' petition, extending said lease for so long as oil or gas was produced upon the premises in paying quantities, and that Levi Carlile, up to that time, to wit, March 5, 1918, did receive and accept, and has received and accepted, all of the royalties of one-eighth of the oil produced by the defendant company on said premises by its oil lease and extension. That hence, the said Levi Carlile has no further interest in said suit by reason of said sale, and by reason of his acceptance and transfer of said royalties he has ratified and affirmed the contract and stipulation so made and entered into by the said guardian and approved by the court.

To this supplemental answer, the plaintiffs filed no reply.

On the 23d day of May, 1918, the attorneys for the Prairie Oil & Gas Company presented their demurrer to the petition, same was argued, and the court sustained the same, to which ruling plaintiffs excepted and refused to amend said petition and elected to stand thereon as against the defendant Prairie Oil & Gas Company. Thereupon the counsel for the plaintiffs and for the defendant National Oil & Development Company made their statement to the court of the issues involved in the case. Whereupon the attorney for the defendant National Oil & Development Company moved the court for judgment on the pleadings as against Levi Carlile, and moved for judgment on the pleadings as against B. E. Capps, and after argument the court sustained the motion as to

both plaintiffs and dismissed the petition as to the National Oil & Development Company, to which ruling of the court the plaintiffs and each of them excepted and elected to stand upon their pleadings and decl'ned to plead further as against the defendant National Oil & Development Company. The plaintiffs prayed an appeal to the Supreme Court, and notice of appeal was accepted.

Transcript of appeal was filed in this court October 8, 1918. Hence, the appeal is now before this court upon the question of the sufficiency of the plaintiffs' petition and the sufficiency of the pleadings as raised by the demurrer, and the motion for judgment on the pleadings, both sustained by the trial court.

The plaintiffs in error in this case contend, in their brief, that the fraud they allege is fraud extrinsic of the record, and, hence, if the fraud is sufficient, it is such fraud as can be alleged and proved in a collateral attack for the purpose of having the judgment of the probate court decreed void. They contend, furthermore, that the allegation as to the gross inadequacy of consideration is also permissible in a collateral attack upon the judgment in the instant case, and for the purposes of showing the same to be void.

The defendants in error contend, in their brief, that the allegations set forth in the plaintiffs' brief are not representations of present or past facts, but are in the nature of the expressions of opinion and of matters that are to be done in the future. The defendants in error further contend that, even if the allegations of fraud be held to be sufficient representations constituting fraud they are not extrinsic fraud and cannot be proved aliunde the record and are such representations as induced the action of the guardian and the action of the court and such facts as the court is presumed to have considered in arriving at his judgment, and hence the question of fraud is concluded by the judgment and it is not such fraud as can affect the judgment collaterally.

The holding of this court is such, however, that it is not necessary for it to determine the distinctions thus raised by the briefs of the plaintiffs in error and defendants in error. The only question to be determined is the sufficiency of the petition and the pleadings.

Three essentials are required to give legality to a judgment. They are: First, jurisdiction of the parties; second, jurisdiction of the subject-matter; and third, the power of the court to enter the kind of judgment entered.

The county court that made the orders and judgment involved in the instant case seems to have had jurisdiction of the parties, consisting of one of the defendants in error, by its representative, and the guardian of one of the plaintiffs in error, Levi Carlile, and the law gave the county court general jurisdiction over the estate of the minor and the power to make orders pertaining to such estate in the way and manner regulated by law; but our holding is that the county court of Cherokee county did not have the power to make the kind of decree that was made in the instant case.

A brief analysis of what is called the confirmatory order shows that the county court of Cherokee county did the following: It either directed, by its order, the guardian to enter into a contract or a stipulation with the representative of the National Oil & Development Company, for a price already fixed and determined, covering the interests of this minor in the oil and gas upon the lands of the minor, and then after the contract or stipulation was executed as directed the court confirmed the same; or else the guardian first entered into the contract or stipulation with the representative of the National Oil & Development Company, and after the same was executed, brought it to the court for confirmation, and the same was confirmed. As to which method was pursued herein, it is difficult to determine from the record. But whether the court did first issue an order directing the contract to be made with the National Oil & Development Company, upon the terms already determined before confirming the same, or whether the guardian acted upon his own initiative, makes no difference, for the holding of this court is such that in either event the judgment is void on its face, since the order itself does not purport to be a sale, but a modification of the terms of the old lease, and for a term extending beyond the minority of the ward, and constitutes a legal fraud as against the minor. No guardian and no court, as we view the law, has the authority, either acting separately or conjointly, to enter into a private deal the very nature of which and the manner of its handling being such as to prevent any competitive sale of the property of a minor, whether the same be personal property, chattels real, or real property. It must be borne in mind that the transfer or sale of the interests of a minor in any of his property can only be done as the law directs. The nature of this transaction is plainly shown and disclosed upon the face of this judgment and the accompanying stipulation. No extrinsic truths are required to show the nature of the proceeding. The recitals in the judgment and the accompanying stipulation show just what was done;

and just what was done had the inevitable effect of preventing a free, fair, public, and competitive transfer of the rights of this minor in his property. This court knows of no law that sanctions such a proceeding.

It may be contended that this deal was fair to the minor, that it was to his best interests that such a deal be made; but courts, which are supposed to stand guard over the rights of minors and whose duty it is to see that the safeguards of the law that have for their purpose the protection of minors in their property rights are not impaired—the courts cannot in any particular case sanction any relaxation of the rules that are intended to protect those who labor under disabilities and are held not capable to contract for themselves. All who deal with the property of minors must take notice that they can only deal with them safely as the sanctions of the law permit.

It may be further argued that the National Oil & Development Company had equitable rights in and to the oil they had developed under their lease, and that the original lease was taken under certain misconceptions of the law, at the time the lease was taken, in that a lease could not be taken to extend beyond the time of the minority of the minor, and that under the customs and usages prevailing in the oil country certain equities had arisen in their favor, and that the rigid rules of the law should be mitigated in their favor.

If that were true, and their contentions were sufficient to relieve them against the terms of their contract, why are they not found in a court of equity asking relief, instead of in a court that is bound by the rules of law and can only act legally and as those rules direct?

The facts in the instant case, disclosed by the pleadings of the plaintiffs in error, show that a lease was made with the guardian of this minor in the year 1905, and that the lessee went upon said lands, under said lease, and developed 32 producing wells. That the lease ended, by its own terms, September 13, 1917, one day before the minor reached his majority. On the date fixed for the ending of the terms of this lease, the rights of the lessee in and to the oil from said lands would have ended, unless the stipulation and order confirming the same had the legal effect of extending them. The situation that confronted the lessees on the day that this purported stipulation and confirmation were made, and before they were made, was such that on the day following the 13th day of September, 1917, the minor would own eight-eighths of the oil; but immediately after this transaction and the deal in the county court

of Cherokee county had been put through, if that transaction is held to be legal and binding upon the minor, then the lessees would own seven-eighths as long as oil was produced in paying quantities, and the minor would only own one-eighth, which seven-eighths, it is alleged, had the present value of $15,000. The consideration paid was $100 and an increase of royalty from one-tenth to one-eighth, and other uncertain and undetermined considerations which might or might not have been ample and sufficient to sustain the transaction in event it is held otherwise legal.

It seems to be admitted that if this transaction had been the disposition of an original oil and gas lease, and not what the defendants in error called a modification of an old lease, it would have been necessary to have complied with rule No. 9 of the Supreme Court, which provides that no oil or gas or other mineral lease covering lands belonging to minors or incompetents shall be allowed, except when sold at a sale in open court to the highest and best responsible bidder; and that all petitions for the approval (sale) of oil and gas leases shall be filed five days before the same are sold as provided herein, and notice of such sale must be given by posting and by publication where publication is practicable. We cannot understand why more rigid rules would be applied, and are held to be necessary, for a legal sale of a minor's oil interests before development of oil, than would be required for the disposition of a minor's interests after oil is developed. The statement of such a contention is its own answer, and the absurdity of it is manifest. The courts do hold that a lessor capable of contracting for himself, and capable of making waivers and of being estopped, can, during the lifetime of a lease, make extension of the same; but when it come to dealing with minors and those under disability, the minor can only be bound by the proper orders of the court having jurisdiction of his estate. No one else, and through no other medium can he be legally dealt with, and even the courts that have jurisdiction to alienate and transfer the rights of its minor wards are controlled by certain fixed and essential rules, and a failure to comply with them vitiates and destroys the force of its actions and one of those essential and fundamental rules is that no court has the power to authorize or confirm a transaction that has for its purpose the disposition and sale of the property rights of its ward when that transaction is handled in such a way that the prevention of free, fair, open, and public sale, or the competitive bidding, is inevitably prevented.

The law pertaining to the sale of oil and gas leases, in force and effect in the state of Oklahoma, has been interpreted in the cases of Duff v. Keaton, 33 Okla. 92, 124 Pac. 291, and Cabin Valley Mining Co. v. Hall, 53 Okla. 760, 155 Pac. 570; and interpreting section 6569, Rev. Laws 1910, the first cited case upheld the sale of oil leases of minors where the application was filed on a certain day and order made finding the making of a lease advisable and directing sale, the sale consummated and confirmed all done on the same day; but an investigation of that case shows that the application set forth asks for an order directing the guardian to make a contract, not to any particular person, and the order directing the sale did not direct the sale to be made to any particular person for a certain determined price. But what have we in the instant case? If an application was made at all to the county court of Cherokee county, it was an application to dispose of this lease-hold interest to the National Oil & Development Company, and that for a certain fixed consideration. And if an order was made at all, directing the sale, it provided and directed the guardian to dispose of said leasehold interests to the National Oil & Development Company, and that at a certain fixed and directed consideration. And then the confirmation confirmed the sale to the National Oil & Development Company, at the fixed consideration. That this was done is shown on the face of the stipulation and the order confirming same, and they should be considered together. This we will show later.

The case of the Cabin Valley Mining Co. v. Hall, heretofore cited, was a case like the instant case, where a lease had been taken for a certain time and expired the day before the majority of the ward, and the lessee and the guardian agreed to an extension or modification of the lease, made four years before its expiration, for and in the consideration of $400 and an increase in royalties. It was agreed that the lease be extended beyond its term for a period thereafter as long as oil and gas was produced in paying quantities. The transaction complained of took place in 1908. The guardian applied to the county court for authority to execute form "K". Form "K" was a form for the extension of leases provided and approved by the Interior Department. The extension made in this case seems to have been with the approval of the Interior Department. The main controversy in the case seemed to revolve around the proposition as to the power to make a lease on a minor's lands the term of which would extend be-

yond the minority of the minor, and being involved in the transaction, in the cited case, because the extension provided to extend the lease to a time covered by the minority of the minor and as long thereafter as oil or gas was produced in paying quantities. The syllabus in the case does not cover any other proposition of law. The procedure pursued by the court, in making this extension, was only incidentally considered and indifferently discussed by the lawyers in their briefs and by the court in its opinion. The court, in the cited case, after laying down the proposition that county courts in this state were courts that procured their power solely from the Constitution and statutes of the state, and after citing a few of those statutes and a few provisions of the Constitution applicable to county courts, then took up a discussion of the powers of equity courts in handling the estates of minors and others under disability, seemingly with a view of arriving, by analogous reasoning, to the conclusion that the statutes and Constitution of our state gave the same powers to our county courts. The record in the Cabin Valley Mining Co. case was filed and the appeal perfected on March 14, 1913. Opinion rendered February 16, 1916. rehearing denied June 6, 1916. At the time the cited case was tried in the court below, rule No. 9 had not yet been promulgated by the Supreme Court. The probabilities are that the rule was promulgated by this court and embodied in the probate procedure as an outgrowth of the discussions in the Supreme Court of the Cabin Valley Mining Co. case. The attorneys for the defendants in error cite section 6569, Rev. Laws 1910, and state that it had the effect of making it discretionary with the county court whether a lease be let at public bidding or private negotiation. An investigation of that section shows that it pertains to the investment of proceeds of the sale of property of the ward after sales have been made and pertains to the management and handling of the money and proceeds of the sales and their disposition.

The laws in force and effect in this state pertaining to the powers of county courts over minors at the time the opinion was rendered in Cabin Valley Mining Co. v. Hall were the same laws that were in force and effect at the time Mr. Justice Williams rendered the opinion in the case of Duff v. Keaton, heretofore cited, and regarding the condition those laws were in at the time of the rendering of the opinion in Duff v. Keaton, Mr. Justice Williams had the following to say:

"The statutes of this state are entirely lacking as to any specific provision for the procedure to be followed by the guardian in leasing the lands of his ward for agricultural or grazing or commercial purposes or for exploring for oil or gas."

On page 28 of the defendants in error's brief, and in discussing whether the record in this case showed that a petition was first filed in the county court asking for authority to enter into the stipulation, they refer to exhibit "A," attached to plaintiffs in error's reply in the court below. The exhibit referred to is a copy of the petition filed by Levi Carlile after he became of age in the county court of Cherokee county to set aside the order confirming the stipulation for the extension of the lease. We quote the following from said exhibit, beginning on page 49 of case-made.

"The plaintiff further says that by reason of said false and fraudulent representations made by the said Humphreys, and believing them to be true, the said Thomas H. Carlile signed a petition praying the court to make an order authorizing the execution of said stipulation and presented the same to the county court of Cherokee county and plaintiff says that upon the hearing of said petition the same false and fraudulent representations were made to the county court of Cherokee county, Oklahoma, as had been made to the guardian aforesaid, to seek the execution of said stipulation above mentioned by the said Humphreys, he acting in the capacity aforesaid, for the defendant National Oil & Development Co., and knowing at the time that the said representations were false and fraudulent, the plaintiff says that the county court relied upon said false and fraudulent representations and believing them to be true made and entered the orders marked plaintiff's exhibit 'B' and 'C', authorizing the said Thomas H. Carlile, guardian, to execute the stipulation hereto attached as plaintiff's exhibit 'B' and the order approving and confirming the execution of said stipulation hereto attached as plaintiff's exhibit 'C'."

Exhibit "B", referred to, does not seem to be attached to the petition filed in the county court, and exhibit "B" seems to be the order of the court directing the guardian to execute the stipulation. Exhibit "C" appears to be the order of the county court approving the stipulation as executed, and it is attached. The order confirming the contract of extension refers to the previous order twice in the following language:

"The said stipulations having been executed in pursuance of the order made and entered herein on the 20th day of September, 1917, and the court having examined said stipulation and heard the evidence on the same and it appearing that the same is in proper form and that a valuable and fair consideration has been paid the lessor there-

ror and that the order and direction of this court has been fully complied with, the court well and sufficiently advised in the premises,

"It is ordered and adjudged, by the court that said stipulations be and the same is in all things hereby ratified, approved and confirmed."

Upon the proposition as to what is shown upon the face of the stipulation and the order confirming the same, when considered together, pertaining to the nature of the transaction and the relations of the court thereto, we will make the following comment: In the first place, the order refers to the stipulation, not as a lease, but calls it a stipulation modifying the terms of the oil and gas mining lease, theretofore entered into on the 7th day of October, 1905, by Thomas H. Carlile, as guardian of Levi Carlile, with the National Oil & Development Company, and said stipulations were executed on the 20th day of ebruary, 1917. The date of the confirmatory order is the 21st day of February, 1917; the court then, further down in its order, says:

"Said stipulations having been executed in pursuance of the order made and entered herein on the 20th day of February, 1917" —the inevitable conclusion being that if the stipulations were executed in pursuance of the order directing the execution of the stipulation, then, whatever the stipulations provide for, the court must have directed to have been done, by its order on the 20th day of February; and if the provisions of the stipulations are such that they exclude the idea that any one had the power to carry them out but the old lessee, then the effect of the order directing and the stipulation itself was such as to restrict the contracting party to the old lessee under the old lease, the National Oil & Development Company. The language of the stipulation and the terms of the same, as set out in the order confirming the same, provide that the lessor is to receive one-eighth instead of one-tenth royalty as formerly provided.

It provides for the payment of one $100. It provides for the installation of vacuum pumps within 30 days from the date of the stipulation, which was within the term, and no one could carry out said condition except the National Oil & Development Company. Further down in the order, after saying that he had examined the stipulation, the order states as follows:

"That the order and direction of this court has been fully complied with."

If it has been fully complied with, the court must have directed that the stipulation be executed in the manner that it was executed; and, hence, upon the face of the

record, the possibility for competitive bidding and of any one else procuring any interests in and to said oil rights belonging to said minor than the said National Oil & Development Company was absolutely foreclosed by the order of the court directing the execution of the stipulation.

While the court declares it a modification in his order, and the defendants in error, in their pleadings and brief, declare the stipulation to be a modification, done within the term of the lease, which is true (done on February 21, 1917), the old lease ending by its terms on the 13th of September, 1917, yet the idea that it was merely a modification, such modification to be carried out during the life of the old lease, is destroyed by the provision of the stipulation that reads as follows:

"The term of said lease is extended to September 13, 1917, and as long thereafter as oil and gas is produced therefrom in paying quantities, by the lessee, its successors, or assigns."

This provision destroys and makes the naming of the stipulation a modification not only a misnomer, but also a delusion. If the stipulation and order, to repeat, are permitted to stand as of legal force and effect, the inevitable consequence is to transfer seven-eighths of this minor's interest in said oil to the National Oil & Development Company, and that it, in effect, was such a transaction is shown upon the face of this record, and it was in no sense a compliance with rule No. 9 of the probate procedure, laid down by this court and made effective June 15, 1914. The defendants in error contend, in their brief, that the presumption is that all things necessary to give the court jurisdiction in granting the confirmatory order were done. It is our contention that the order and the stipulation, which are a part of the court record, taken together, negative the idea that there was any attempt to comply with rule No. 9. The defendants in error do not contend that it was intended to be a sale, in their brief or in the allegations of their pleadings. The following is the sixth paragraph of the separate answer of one of the defendants in error, the National Oil & Development Company:

"Defendant further denies that the order of the county court confirming said stipulation above set forth was or is void or that the court was without jurisdiction; or that said stipulation extending said lease is null or void or of no effect or that it is in truth or in effect or constitutes the making of a lease on plaintiff's land within the rules of the court, but avers that said stipulation was and is in truth and in effect what it purports to be and nothing more, namely, an oil and gas mining lease already made

and entered into and then already in force and effect."

The trouble with their conclusion is that they did not stop at the modification of the old lease, but extended the term of the old lease, which had the same effect as the sale of a new lease, to begin and be in effect at the end of the term of the old lease. If the modifications and changes had been limited to the terms of the old lease, there might be something in the argument of the defendants in error, but it is not such and does not purport to be.

If the order of the county court is upheld, the effect would be to take the interests of the minor and transfer the title to the defendants in error to the same extent as the execution of another lease. In effect it would be doing, indirectly, just what the defendants in error admitted could not be done directly. They admitted that execution of a lease to begin at the ending of the term of the old lease would require a compliance with rule No. 9, and all the formality of a sale of an original oil lease. But, to repeat, the effect is the same upon the interests of the minor, as far as the conveyance of his interests are concerned, whether conveyed under a new lease or whether held to be conveyed under such a transaction as took place in the instant case. The transaction in the instant case is in effect a sale of the minor's oil interests in the land under the disguise of an extension of a lease, and it is unreasonable to contend that it is anything else.

The defendants in error suggest, in their brief, that it would be a vain and useless thing for the court to put up at public auction, during the term of a lease, the question of the extension and modification of the old lease, for the reason that no one would bid on such an interest but the old lessee, due to the interests of the old lessee still subsisting. The trouble with such a contention is that it involves a suggestion of a reason why a court, in the exercise of his discretion, and with due regard to the interests of the ward, should not make an order allowing a sale or an extension, under such conditions, but if, in any case, the county court, in his discretion, concluded it was for the best interests of the minor that it be done, there is no reason why there couldn't be at least a reasonable compliance with the procedure laid down in rule No. 9. It might result in a vain thing, and result in the same thing as has resulted in the instant case. But it would result in a sale judicial in its nature, and the rights of the minor would at least be protected by an opportunity for open and public bidding, and the purposes of the law satisfied.

We quote the following from page 24 of the defendants in error's brief:

"In a great many instances where such leases have been extended, no doubt the transaction is entirely free from the charge even of the slightest taint of fraud, and have in every sense, been to the advantage of the minor. The rule here sought to be invoked would strike down every such contract extending a lease, it matters not how honestly and fairly made, how beneficial to the minor's estate, or how much investment has been honestly made under it."

Our reply to this statement is that the purported extension of this lease was made a long time subsequent to the promulgation of rule No. 9 by the Supreme Court. The rules of the Supreme Court have the same force and effect, as has been held by this court, as does a statute. We are unable to discover where any constitutional or statutory provisions in force before said rule was promulgated are contravened or set at naught by this rule. As stated by Mr. Justice Williams in the quotation from his opinion in Duff v. Keaton, there does not appear to have been any definite or specific rules of procedure in this state, and hence there is nothing to be contravened. About the only rules controlling the oil procedure seem to be several general and indefinite statutory provisions from which the Supreme Court of this state has sought to evolve a rule. About the most definite thing that has yet been provided for is rule No. 9 of the Supreme Court, and even that has been accused of being indefinite, and we think, as do the attorneys for the defendants in error in this case, that the word "approval," used in said rule, should be changed to "sale," and that that is its inevitable meaning and has been so interpreted in actual practice. We hold it to be no infringement of the rule to have approval follow the sale immediately; and in actual practice the custom is to have the approval of the sale follow immediately after the sale. No petition for the approval being required, and petition for sale being a reasonable requirement, the requirement to have the petition for approval on file five days must inevitably mean the "petition for the sale," instead of the "petition for approval."

All persons are presumed to take notice of the promulgation of rules of the Supreme Court.

Whether rule 9 be held to be merely a rule of procedure or a substantive regulation, it is a provision which is required to be pursued at the beginning of every sale of an oil and gas interest belonging to a minor. The whole import and purpose of it was to give an opportunity for competitive bidding for a

minor's oil interests, and no technical refinement can read any other purpose into it. These rules are not promulgated to be flounted and disregarded and their terms evaded.

It is, therefore, the holding of this court that the stipulation, and the order confirmatory thereof, entered into and confirmed on the 20th and 21st day of February, 1917, between one of the defendants in error, the National Oil & Development Company, and Thomas H. Carlile, guardian of Levi Carlile, one of the plaintiffs in error herein, is void and of no effect and conveyed no interests of said minor.

There are two other propositions raised by the defendants in error yet to be disposed of. And that is the question raised by the answer and the supplemental answer, whereby it is alleged: First, that the plaintiff in error Levi Carlile, after he became of age and having the power to contract, ratified the extension of said lease by accepting the royalties and doing other acts confirmatory of said extension.

In the case of Capps v. Hensley, 23 Okla. 311, 100 Pac. 515, in an opinion by Dunn, Justice, this court, after holding that a lease of agricultural lands, made by a natural guardian without the sanction of a court or an order to lease, was void as to the infant, at his or the option of those who legally represented him, held, that after becoming of age the minor could adopt or affirm the transaction of his father. But in that decision it was not necessary for the court to have so held, since the minor had died and the father being the sole heir, it was held that the father had adopted and affirmed the lease and acted in such a way that he was bound by the same, and in the reasoning of the case they seem to hold that the minor could have adopted or affirmed. but not ratified: the case showing the distinction between ratification and affirmation or adoption.

Chief Justice Williams, in the case of International Land Co. v. Marshall, 22 Okla. 693, 98 Pac. 951, held that after a minor had arrived at the age of 21 years, he could not sustain a suit to set aside a deed absolutely void, where such a minor had fraudulently misrepresented his age at the time of the transaction, until such minor had first tendered back the consideration received. Levi Carlile tendered the consideration back that the guardian received. Section 5035, Snyder's Compiled Laws of Oklahoma, 1909, reads as follows:

"A minor cannot give a delegation of power, nor under the age of 18, make a contract relating to real property or any interest

therein, or relating to any personal property not in his immediate possession or control."

Section 883, Rev. Laws 1910, is the same, with the following added: "Except as otherwise specially provided."

It appears from the above provisions that a minor cannot grant a delegation of power even before or after he is 18 years of age. We do not think that a minor can ratify a void act. He might, by a new contract after becoming of age, adopt or affirm, as is expressed in the case of Capps v. Hensley, heretofore cited. The following is from 22 Cyc. 514:

"An infant cannot legally appoint an agent, or give a power, warrant or letter of attorney. It has been frequently asserted that such acts on the part of an infant, as well as the acts of the person attempting to be appointed agent or attorney, are absolutely void; nevertheless, there is also very respectable authority for the view that such acts are voidable only and not void."

In the case of Trueblood v. Trueblood (Ind.) 65 Am. Dec. 756, we find the following:

"Infant's appointment of agent is act absolutely void; and the act of a person assuming to be agent of an infant cannot be ratified by the latter after attaining majority.

"In the first volume of American Leading Cases, 3d Ed., 248 et seq., the doctrine is laid down, as the result of the American cases on the subject—that the only act an infant is incapable of performing as to contracts is the appointment of an agent or attorney. Whether the doctrine is founded in solid reason, they admit, may be doubted; but assert that there is no doubt but that it is law: see cases there collected.

"The law seems to be held the same in England. In Doe v. Roberts, 16 Mee. & W. 778, a case slightly like the present in some respects, the attorney in argument said: 'Here a tenancy has been created, either by the children or by Hugh Thomas, acting as their agent.' Park. B., replied: 'That is the fallacy of your argument. An agreement by an agent cannot bind an infant. If an infant appoints a person to make a lease, it does not bind the infant, neither does his ratification bind him. There is no doubt about the law; the lease of an infant, to be good, must be his own personal act.' So here, had the bond been the personal act of the infant, he could have ratified it. It would have been simply voidable. But the bond of his agent, or one having assumed to act as such, is void, and, not capable of being ratified: See Hiestand v. Kuns, 8 Blackf. 345."

Since we have held that this stipulation, and the order confirming the same, is void and of no effect, then it constitutes an unauthorized act of the guardian with no sanction of law or the court with the effect

of legalizing it; neither is it the act of the minor after reaching the age of 18; the minor is therefore incapable of legalizing the same after reaching age. He might adopt or affirm by way of a new contract or what would amount to a new contract, as suggested in Capps v. Hensley, heretofore cited. The statute, heretofore quoted, absolutely forbids a minor, at any time during his minority, giving a delegation of power. in other words, appointing an agent. And any such appointment is absolutely void, and if any one assumes to act for him, the act done is absolutely void, and the minor cannot ratify such act after his majority.

The question as to whether he can adopt or affirm by a new contract is a question we are not herein determining; and what acts would constitute such an adoption or affirmation we are not undertaking, herein, to define.

In the case of Capps v. Hensley, heretofore cited, the following quotation is given from Wald's Pollock on Contracts (3d Ed.) pp. 620 and 621:

"A party to an apparent agreement which is void by reason of fundamental error has more than one course open to him. * * * He is entitled to treat the supposed agreement as void, and is not, as a rule, prejudiced by anything he may have done in ignorance of the true state of the facts, yet after that state of facts has come to his knowledge, he may nevertheless elect to treat the agreement as subsisting; or, as it would be more correct to say, he may carry into execution by the light of correct knowledge the former intention which was frustrated by want of the elements necessary to the formation of any valid agreement. It is not that he confirms the original transaction, for there is nothing to confirm, but he enters into a new one."

After a minor has become 18 years of age, under the laws of this state as they seem now to exist, he can enter into a contract personally as to any matter except the giving of a delegation of authority or the appointment of an agent, and the transaction, so entered into by the minor, is not void, but merely voidable, and he can ratify it after he becomes of age. But a transaction involving the property of a minor that is absolutely void, he cannot ratify, upon the theory that the contract is non-existent and there is nothing to ratify; but the authorities seem to hold that after the full knowledge of the transaction is brought home to the minor, after he becomes of age, he may adopt or affirm it as his own contract; in other words, make a new contract, and such will bind him.

It appears from an examination of the pleadings in this case that the defendants below, defendants in error herein, set up the grounds of ratification of this contract by the plaintiff in error Levi Carlile, and he specifically denied the ratification of the contract, further stating in the reply that before he had received any of the monies from the defendants in error pertaining to the royalties he had filed a petition in the county court of Cherokee county disavowing the contract and stipulation relied upon by the defendants in error, on the grounds that the same was void, and that said petition was not dismissed until a day or two before the filing of the petition in the district court in the instant case; that he had. hence, disavowed the contract within the year, after becoming of age.

The second question raised is one as to the abatement of suit. It appears from the pleadings that on the 10th day of October, 1917, Levi Carlile executed to B. E. Capps an oil and gas lease on the premises in controversy herein, conveying a seven-eighths interest and reserving a one-eighth interest, and that he sues in this case, as far as his own interest appears, for himself and for the use and benefit and in behalf of B. E. Capps, the other plaintiff in error.

In the supplemental answer filed by defendants in error they have set up the fact that on the 5th day of March. 1918, Levi Carlile, one of the plaintiffs in error herein, by a warranty deed, conveyed his interest in and to said land and transferred his interest in the royalties coming therefrom, for and in consideration of $9,000, to John H. Kane. To this supplemental answer, there is no reply. The conveyance to John H. Kane was made after the institution of the present suit, and on, to wit, March 5, 1918, while the instant suit was filed January 31, 1918. The defendants in error contend that, since Levi Carlile has conveyed his interests in the subject-matter of this suit and is not the real party in interest, the suit, for that reason, abated.

We do not think the suit is abated in this case. In the case of Cushing v. Newbern et al., 75 Okla. 258, 183 Pac. 409, wherein the interests of the plaintiff were conveyed, as in the present suit, this court, through McNeill, Justice, stated as follows:

"As to the intervener, Lucy Harjo, the plaintiff argues that, by reason of her having disposed of her interest prior to the termination of the suit, she could no longer maintain her action to quiet title. Section 4695 of the statutes (Rev. Laws 1910) provides as follows: 'In case of any other transfer of interest. the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action.'

CARLILE v. NATIONAL OIL & DEV. CO. 229

"It appears that this statute is controlling in the case at bar, and the plaintiff presented on authority or reason why this statute should not govern. We therefore hold that in the case at bar the statute will govern, and it was not error to permit Lucy Harjo to continue to prosecute the case in her name."

We hold this case to be controlling in the instant suit.

We, therefore, hold that the trial court committed error in sustaining the demurrer to the petition, and in sustaining the motion for judgment on the pleadings, and the judgment of the trial court is reversed and the cause remanded for such other and further proceedings as are not inconsistent with the holdings herein.

HARRISON, C. J., and JOHNSON, McNEILL, and NICHOLSON, JJ., concur.

On Petition for Rehearing.

McNEILL, J. The defendants in error have filed a very extensive brief in support of their petition for rehearing and in addition thereto numerous attorneys have filed amicus curiae briefs. The trial court sustained a demurrer to the petition as to one defendant and sustained a motion for judgment on the pleadings as to the other defendant. The petition asked for cancellation of the oil and gas lease upon several grounds, to wit: (1) That it was obtained by fraud; and (2) that the procedure adopted in procuring said lease was in direct violation of rule 9 of this court [47 Okla. vxi].

It is alleged that the lease at the time was of the reasonable value of $15,000, and the same was obtained for the sum of $100.

If we accept the allegations of the petition as true, it is very apparent a great injustice has been perpetrated upon the minor and a valuable oil and gas lease obtained upon his property through a pretended court proceeding, at such a grossly inadequate consideration that it should at least appear to the conscience of a court of equity. Those filing amicus curiae briefs are interested in this court rendering the proper decision and properly protecting the rights of both parties to the litigation, and correctly announcing the law, yet in no instance have they, under the facts as stated, suggested that the minor was entitled to any relief. A great portion of the briefs for rehearing suggests the proposition that rule 9 of this court is simply a rule of procedure, and a failure to comply with said rule when acquiring an oil and gas lease upon the lands of a minor, where the lease has been confirmed by the court, will not render the lease void.

In dealing with this question it is necessary first to consider the power and authority of this court to prescribe rules relating to probate procedure in the county court, where not prescribed by statute, and not in conflict with the Constitution or statutes of this state.

The power and authority of this court to prescribe such rules and the force and effect of such rules when promulgated were decided by this court in the case of State ex rel. Freeling v. Kight, 49 Okla. 202, 152 Pac. 362, where the court stated:

"By section 2, art. 7, of the Constitution, the Supreme Court is given jurisdiction to exercise a general superintending control over all inferior courts and all commissions and boards created by law, and this jurisdiction is a separate and distinct grant from its appellate jurisdiction."

In the first syllabus paragraph the court stated:

"By virtue of section 5347, Rev. Laws 1910, the Justices of the Supreme Court are given authority to prescribe such rules regulating procedure in probate matters as are necessary to carry the provisions of the Code into effect, and to prescribe such further rules consistent therewith as they may deem proper."

The second syllabus paragraph is as follows:

"Such rules, when so prescribed, apply to and are binding upon the county courts of this state, and such courts and judges thereof are without power to dispense with the requirements of such rules, or to vacate or set the same aside, or to prescribe other rules in lieu thereof or in conflict therewith."

In the body of the opinion the court quoted with approval from 6 Stand. Ency. Proc. p. 63, as follows:

"Rules have the force and effect of law, and are binding upon litigants, and upon counsel, upon the court and its officers. A rule made pursuant to statutory authority by an appellate court to govern the procedure in inferior courts is binding upon the latter, and rules adopted by a board or convention of judges are binding upon the individual judges."

In the body of the opinion the court quoted with approval from 18 Ency. P. & P. p. 1271, as follows:

"Although courts may sometimes dispense with the requirements of their own rules, it is uniformly held that they have no such power in regard to rules prescribed for them by the higher court."

The opinion in the above case was cited, approved, and followed by this court in the

case of Haddock v. Johnson, 80 Okla. 250, 194 Pac. 1077.

Let us now consider the contention of the defendants in error on rehearing in view of the decision of this court in the case of State ex rel. Freeling v. Kight, supra, where the court stated:

"Rules have the force and effect of law, and are binding upon litigants, and upon counsel, upon the court and its officers."

The defendants in error do not complain of the statement of law as announced above, but state that a rule of procedure cannot deprive the court of jurisdiction. If rule 9 has the same force and effect as an enactment of the Legislature, then let us treat it as if it were one of the sections of our statute relating to the sale of an oil and gas lease upon the lands of the minor. The first portion of the rule provides:

"No oil and gas, or other mineral lease, covering lands belonging to minors or incompetents, will be approved except after a sale in open court to the highest and best responsible bidder."

Let us compare this with section 6384, Rev. Laws 1910:

"No sale of real estate at private sale shall be confirmed by the court unless the sum offered is at least ninety per cent. of the appraised value thereof, nor unless such real estate has been appraised within one year of the time of said sale."

These sections, one dealing with the confirmation of sale of an oil and gas lease, the other with the confirmation of the sale of the land of minors, contain very similar language, and the language in one is as mandatory or prohibitive as the language in the other. This court had section 6384 under consideration in the case of Winters v. Oklahoma Portland Cement Co., 65 Okla. 132, 164 Pac. 965, and the court in the fifth syllabus paragraph announced the following rule:

"The provision of the statutes (Rev. Laws 1910, sec. 6384) which provides that no sale of lands of minors at private guardianship sale shall be confirmed where the bid is not 90 per cent. of the appraised value, or where there has been no appraisement of such lands within a year prior to the sale, is mandatory, and goes to the jurisdiction of the court to make the order of confirmation. Where an order of confirmation of such a sale is made in violation of such provision, the order of confirmation is void for want of jurisdiction."

In that case it was urged that the failure to appraise the lands, or a sale for less than 90 per cent. of the appraised value, was a mere irregularity and was cured by

the order of confirmation of the sale, and in support of that contention the parties relied on the cases of Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433, Sockey v. Winstock, 43 Okla. 758, 144 Pac. 372, and the same cases that are relied upon in this case.

In the above case, this court, in commenting upon the case of Eaves v. Mullen, supra, used this language:

"The rule announced in Eaves v. Mullen, supra, as to the effect of irregularities and defects after the acquirement of jurisdiction and antecedent to the order of confirmation, was based upon decisions from the Supreme Court of the United States, the appellate courts of California, South Dakota, and Arkansas. We do not find where the three first named courts have passed upon the question as to whether a violation of the appraisement by the order of confirmation, in a private guardianship sale, is a mere irregularity or is a jurisdictional departure, but the Supreme Court of Arkansas, in the case of Mobbs v. Millard et al., 106 Ark. 563, 153 S. W. 821, rendered after the decisions in the Arkansas cases cited in Eaves v. Mullen, held that such a violation was not an irregularity, but a jurisdictional departure, rendering the order of confirmation absolutely void. In Mobbs v. Millard et al., supra, the Arkansas court said: 'Under the law a minor cannot act for himself, and his guardian is his statutory agent. The requirement that no real estate of any minor shall be sold for less than three-fourths of its appraised value was passed for his protection pursuant to a general principle of public policy. Appraisement means valuation. Thus it will be seen the Legislature provided a means for fixing in advance the lowest valuation at which a minor's land can be sold. In the instant case it is conceded that the land was sold for less than three-fourths of its appraised value. * * * We hold that the sale was not in substantial compliance with the statute and is invalid. * * * We do not wish to be understood as holding that errors and irregularities in making the appraisements or in otherwise complying with the provisions of the statute in regard to the sale would not be a substantial compliance with the provisions thereof. * * * But we do hold that an essential requirement of the statute in regard to the sale of a minor's land cannot be entirely omitted and wholly disregarded."

The learned commissioner in the opinion used the following language:

"We must hold that the provision that no private guardian's sale shall be confirmed by the court unless the sum offered is at least 90 per cent. of the appraisement, nor unless the real estate sold has been appraised within one year from the time of such sale, is mandatory, and that an order of confirmation and guardian's deed violating this provision are absolutely void. We should not

be understood as holding, however, that mere irregularit es in the appraisement proceedings would have such effect, if such irregularity was not such as to deprive the appraisement of substance."

The case of Winters v. Oklahoma Portland Cement Co. was before this court a second time and entitled Oklahoma Portland Cement Co. v. Winters, 77 Okla. 36, 186 Pac. 468. The second syllabus paragraph in the opinion quoted the fifth syllabus paragraph in the former opinion, and in the body of the opinion the court, speaking through Mr. Justice Kane, stated as follows:

"Moreover, we have examined the opinion of Commissioner Johnson again, as we did when we approved it on former appeal, and believe that the ruling on the question now under consideration is correct. The authorities cited by the learned commissioner are in point and support his ruling on this question, and the conclusion reached is not, as contended, contrary to the decisions of this court in Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184; Baker v. Cureton, 49 Okla. 15, 150 Pac. 1090; Welch v. Focht, 67 Oklahoma, 171 Pac. 730, L. R. A. 1918 D, 1163; or any other case of this class. In our judgment this case, as held by the learned commissioner, is governed by the authorities cited by him in support of his opinion, and particularly by such cases as Roth v. Union National Bank. 58 Okla. 604, 160 Pac. 505, and Mobbs v. Millard, 106 Ark. 563, 153 S. W. 821. We think the case of Roth v. Union National Bank. supra, is precisely in point in principle.

"As the opinion prepared by the learned commissioner carefully and satisfactorily distinguishes Hathaway v. Hoffman, Baker v. Cureton, and other cases of this class relied upon by counsel for defendant from the case at bar, and the other cases by which it is ruled, no further discussion of these cases is necessary."

This court, in a later opinion, In the case of Glory v. Bagby, 79 Okla. 155, 188 Pac. 881, followed the rule announced in the case of Winters v. Oklahoma Portland Cement Co., supra.

It would be inconsistent to hold that the sale of the lands of the minor sold at private sale for less than 90 per cent. of the appraised value, or where sold without appraisement, in violation of section 6384, Rev. Laws 1910, was a jurisdictional departure and rendered the proceedings void, and to hold that the Constitution and statute of this state empowered this court to prescribe rules for county courts in probate procedure and that the rules so prescribed have the same binding force and effect as a statute, and then to hold that a total failure to comply with rule 9, which contains just

as strong and mandatory language as section 6384, would not be a jurisdictional departure and render the proceeding void.

It is contended that no rule of procedure or statute relating to procedure can deprive a court of jurisdiction. This is perhaps a correct statement of the law, but a rule of procedure or the statute relating to procedure simply prescribes how and when a court may exercise the jurisdiction conferred upon it. The county court has jurisdiction over the estates of minors, but the different section of the statute relating to procedure prescribed when and how the court must exercise that jurisdiction. This court is commited to the rule, if the statute relating to procedure is mandatory, the court must substantially comply with the provisions thereof. Whether the statute is mandatory or directory must be determined from the reading of the statutes themselves, and the intent of the framers, when ascertained, must control.

Bearing in mind that section 2, art. 7, of the Constitution, and section 5347, Rev. Laws 1910, conferred upon the Justices of the Supreme Court power and authority to promulgate rules regulating procedure in probate matters, and that this court has held that such rules, when promulgated, had the force and effect of statutes and were binding upon the inferior courts, in determining whether the rules were intended by the court to be mandatory or directory we must be governed by the same rule of construction that is applicable in construing statutes, and the intention of the framers thereof, when assertained, must control.

There is another rule applicable, and that is announced in the case of Harper v. Victor, 212 Fed. 903, where the court stated as follows:

"A statute should receive a rational, sensible interpretation, one which tends to avoid or remove the mischief at which it was leveled and to accomplish the object sought by the legislative body which enacted it, rather than one which promotes or permits the evil and avoids the accomplishment of the purpose of the enactment."

With this principle in mind, let us consider the reason or apparent reason, if any, for adopting rule 9. In the year 1914, when rule 9 was adopted, this court consisted of practically the same members as when the opinion in the case of Duff v. Keaton, 33 Okla. 92, 124 Pac. 291, was adopted and the court upheld a sale of oil and gas mining lease in the absence of fraud, where a petition was filed for the sale of an oil and gas lease and on the

same day the court made an order authorizing the guardian to sell an oil and gas lease to the highest and best bidder, and on the same day the guardian reported that he had sold a lease upon the land, and on the same day the court approved the sale. It is very apparent that the court did not consider this procedure a sufficient protection for the minor, as the proceedings might all be consummated within an hour's time and no one except the party interested would have knowledge that valuable oil rights of the minor were being offered for sale. Prospective purchasers would have no opportunity to bid, and in this manner the rights of the minor would not be protected and his property would be disposed of at a very inadequate consideration. To avoid this vice and to avoid the evil effects of such proceedings, the court adopted the rules. Why did the court deem it necessary that it be sold to the highest and best bidder? In order that the minor's rights be protected and he receive a just compensation for his property. The rules were no doubt promulgated to prevent just what occurred in the case at bar, to wit, the alleged sale of a valuable lease worth $15,000 for the sum of $100. The requirement that the petition be on file a certain length of time and that the sale be in open court, with an opportunity for every one to bid, was promulgated by the court for the protection of the minor. As was said in the case of Mobbs v. Millard, 106 Ark. 563, 153 S. W. 821:

"The requirement that no real estate of any minor shall be sold for less than three-fourths of its appraised value was passed for his protection pursuant to a general principle of public policy for the protection of the minor."

It is contended, however, that this decision overrules the case of Eaves v. Mullen. This same contention was urged in the case of Winters v. Oklahoma Portland Cement Company; but this court held otherwise. The decisions of the Supreme Court of Arkansas cited to support the case of Eaves v. Mullen followed the former decisions of that court and the court in its opinion stated the law as announced had become a rule of property in that state. The law announced by the majority of the court was severely criticized in a dissenting opinion in the case of Apel v. Kelsey (Ark.) 12 S. W. 703, and it was suggested that if it had become a rule of property, it was the duty of the Legislature to change the same by a legislative enactment. The Legislature made a minor change in the law, and the court refused to follow its former decisions and announced the rule in the case of Mobbs v. Millard, supra, which was cited with approval and followed in the case of Winters v. Portland Cement Co., the opinion in which was adopted November 28, 1916, and a rehearing denied May 15, 1917; so, at the time of acquiring the lease in this case, it was the recognized law of this state that the rules of this court relating to probate procedure in obtaining oil and gas leases were binding upon the lower court and had the same force and effect as a statute.

It was likewise the recognized law of this state that the order of confirmation of a sale of the minor's property, in violation of section 6384 of the statute, was void for want of jurisdiction; so, there can be no rule of property upon which the defendants in error can rely upon. It is suggested in some of the briefs that this was not really a sale of the minor's property. This contention, we think, is well answered in the original opinion. If it is not a sale, it is simply a subterfuge by acquiring a minor's property by a procedure of "stipulation," and "modification."

The National Oil Company had an oil and gas lease upon this minor's property and in a few months he would become of age and its lease would terminate. The day he would become of age he would have a right to the land and all of the oil. The county court would no longer have jurisdiction over his estate. He would have a right to make the kind and character of lease he desired, or he would have the right to produce the oil himself, as the wells had been already drilled. To deprive him of that right, a procedure termed "stipulation," and "modification," was invoked, and the same confirmed by the county court, thereby attempting to deprive him of a valuable lease upon his property for an inadequate consideration. There was no substantial compliance with the rules of this court, and the county court was without jurisdiction to adopt a procedure in direct violation of the rules of this court.

For the reasons stated, the petition for rehearing is denied, and the former opinion adhered to.

HARRISON, C. J., and JOHNSON, ELTING, KENNAMER, and NICHOLSON, JJ., concur.